SALE CREEK COAL & COKE COMPANY *v.* JESSE PRIDDY.

(*Knoxville.*    September Term, 1906.)

1. **MINING.** Owner is not liable for the negligence of his statutory certificated mine foreman resulting in injuries to his mining employee, when.

Under a statute (Acts 1903, ch. 237), regulating the operation of mines, and making the employment of a certificated mine foreman compulsory upon the mine owner, with penalties for failure, and depriving such owner of control over such foreman, and conferring upon such foreman control of the mine with reference to his duties specified in the statute, and securing the faithful discharge of such duties by the imposition of penalties upon such foreman, there is no ground on which to place the liability of the owner for the negligence of the foreman in the performance of his duties resulting in injuries to a mining employee, because the relation of master and servant does not exist between the mine owner and his certificated foreman with reference to his duties under the statute.

Acts cited and construed:  1903, ch. 237, secs. 12, 16, and 20: 1881, ch. 170.

Cases cited and approved:  Transportation Co. v. La Campagnie, etc., 182 U. S., 406; De Forest v. Wright, 2 Mich., 368; Caruthers v. Sydebotham, 4 Maule & S., 77, 85; Lucey v. Ingram, 6 Mees & W., 302, 315.

Case cited and distinguished:  Smith v. Coal & Iron Co., 115 Tenn., 543, decided under Acts 1881, ch. 170.

2. **SAME.** Same. Peremptory instructions for verdict in favor of defendant should be given in such case; dismissal of suit for failure.

Where, in the suit of a mining employee against the mine owner, the proof shows that plaintiff sustained injuries as the result of the negligence of the certificated mine foreman, in failing

Coal & Coke Co. v. Priddy.

to perform his statutory duties, the trial judge should, upon motion of the defendant, peremptorily instruct the jury to return a verdict for the defendant, and for his refusal to do so, the supreme court will reverse the judgment in favor of the plaintiff, and dismiss the suit.

## FROM HAMILTON.

Appeal in error from the Circuit Court of Hamilton County.—M. M. ALLISON, Judge.

SMITH & CARSWELL and J. H. ANDERSON, for plaintiff in error.

A. F. FRAZIER and NORRIS HEADRICK, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Hamilton county to recover damages for an injury suffered by the defendant in error while in the discharge of his duties as a miner in the coal mine of the plaintiff in error, located in the said county of Hamilton. At the close of the evidence introduced by the plaintiff below, the defendant there asked the court for a peremptory instruction. This was refused, but was renewed at the close of all the evidence, and was again refused. The

jury returned a verdict in favor of the plaintiff below for $500 damages. A motion for a new trial was made and overruled, and thereupon judgment was rendered on the verdict. From this action of the court an appeal was prayed and prosecuted to this court.

Sundry errors have been assigned, based on the refusal of the circuit judge to grant the peremptory instruction; also upon certain paragraphs of his charge to the jury, and upon his refusal to give certain instructions asked by the plaintiff in error. We are of opinion, however, that the whole controversy may be settled upon a consideration of the action of the circuit judge in refusing to grant the peremptory instruction.

The facts disclosed by the record, taking the most favorable view of them for the defendant in error, are as follows:

The defendant in error was a young man in his twenty-first year and had been working in the mine of the plaintiff in error for about eighteen months. He had been working about one month in the room wherein he was injured. This room was in the most dangerous part of the mine, owing to the fact that the roof was more insecure than in any other part. No special instructions had been given the defendant in error concerning the dangerous character of the roof. However, the injury seems not to have arisen on account of any want of instructions. The defendant in error had, along with his companion, called in mining parlance his "buddy," dug a considerable quantity of coal and had it ready for

Coal & Coke Co. v. Priddy.

the cars. Owing to the narrowness of the vein, the defendant in error and his companion had to work in a kneeling position. The result of this was that the roof was not high enough to admit the entrance of a car and a mule to haul the coal out. According to the custom it became necessary to blast out about a foot and a half of the roof for a space wide enough to admit the car and mule alongside the pillar of the room. This was done and the roof of the part of the room covering the track on which the car was run was propped by the prop man. It was the duty of the defendant in error and his companion to prop the other portion of the roof. The increased height of the roof over the track was continued to within a few feet of the face of the coal at the end of the room. The defendant in error and his companion had loaded two cars with coal and these had already gone. Thereupon, the plaintiff in error sat down on the track near the face of the coal to rest. While he was in this position, about 250 pounds of slate fell from the roof over the track and brushed against the lower part of his leg injuring it badly. The defendant in error supposed that the roof over the track had been correctly propped and did not examine it or observe that anything was wrong with it, or that there was any danger of the slate slipping down. He testifies that probably he might have discovered the danger if he had tapped the roof with his pick, but further, that, even after such examination is made, the slate often falls without any assignable cause from the roofs that seem to be

sound. The mine foreman, according to the testimony of the defendant in error, had not inspected the roof over the track to see whether it had been correctly propped, although this propping had been done the day before.

The negligence charged is the defective condition of the roof over the track, its want of correct propping, and the want of inspection on the part of the mine boss; that is, his negligence in not inspecting the roof after it had been propped.

In order to a correct solution of the question suggested, it is necessary to state the substance of the mining act of 1903, so far as it applies to the phase of mining presented by the record in the case now before the court. Before setting out the particular parts of the act referred to, bearing upon the case we now have under consideration, it is proper to say that the act is very broad in its scope. Its terms indicate a very minute and comprehensive knowledge of the business of mining and of all of its needs, and show a purpose to direct the conduct of the business with a view to securing the safety of miners by fixed regulations governing all mines and not subject to be varied by their owners.

The act referred to is chapter 237 of the acts of 1903.

The terms of the act bearing upon the controversy now before us are as follows:

By section 12 it is provided: "It shall be unlawful for any person or persons to act as mine foremen, assistant mine foremen or fire bosses of any mine in this State,

Coal & Coke Co. v. Priddy.

unless they are registered as holders of certificates of competency or qualification under this act."

Section 16 provides: "No coal mine shall be operated for a period longer than thirty days without such certificated mine foremen. For all Class 'A' and Class 'B' mines, the foremen shall hold Class 'A' certificates; the assistant foremen may be holders of Class 'B' certificates. In all mines of Class 'C' and Class 'D,' the foremen may be holders of Class 'B' certificates, and all gas bosses shall be holders of Class 'A' or Class 'B' certificates, which certificates shall state on the face of same that they are qualified to act as gas bosses. Any owner, operator or superintendent operating a coal mine in this State for thirty days without such certificated foreman shall, upon conviction of same, be subject to a fine of twenty-five dollars ($25) per day for each and every day operated without such foremen or foreman."

Section 19 provides: "That certificates granted under the laws of this State prior to the passage of this act shall be considered good and in full force as if issued under this act."

Section 20 contains the following provisions: "In order to better secure the proper ventilation of mines and promote the health and safety of the persons employed therein, the operator or superintendent shall employ a competent and practical inside overseer of each and every mine, to be called mine foreman. Said mine foreman shall be licensed as hereinbefore required by this act, and his license as such shall be sufficient evi-

dence of his competency.  He shall be a citizen of the United States, and he shall devote the whole of his time to the duties at the mine when in operation (or in case of his absence, an assistant chosen by him), and shall keep a careful watch over the ventilation apparatus, airways, entries, traveling ways, timbers, pumps and drainage, that as the miners advance their excavations all dangerous coal, slate or rock overhead is taken down or secured, against falling, and that sufficient props, caps and timbers are kept at some convenient point near the mine entrance, which shall be selected and loaded on the cars by the miners, and shall then be hauled to the mouth of the room or face of the entry where he is working;  .  .  .  provided further, that said mine foreman shall not be subject to the control of the operator or owner in the discharge of the duties required of said mine foreman by this act. It shall be the duty of the mine foreman, or foremen, to see that the provisions of this section and the other duties herein defined are faithfully discharged and carried out; and in case of his or their failure to comply with such provisions, and upon con· viction, he or they shall be subject to a fine of one hundred dollars ($100) each and imprisonment for a period of not less than ninety (90) days at the discretion of the court."

The omitted portions of the section indicated by the stars above apply to the ventilation of the mine.

The mine of the plaintiff in error was what is known as a "Class C" mine.  Mr. Parry, the foreman, was duly certificated under the act, and was in charge of the mine

Coal & Coke Co. v. Priddy.

thereunder. The act makes the possession of the certificate sufficient evidence of the competency of a foreman, but the evidence also shows in addition that he was a competent person. The facts stated show that the fall of the slate, so far as traceable to any known cause, resulted from the defective propping over the track. This negligence was that of the mine foreman, arising out of his failure to inspect the work of the prop man and discover the existence of the defect, if any.

The question suggested by this statement, taken in connection with the act above referred to, is whether the owner of the mine was responsible for the negligence of the mine foreman. We are of opinion that he should not be held responsible, for the reason that the duty of the mine foreman, which was omitted, was one which was imposed upon him by the statute and concerning which the mine owner had no control of him under the express terms above quoted.

The relation of master and servant as to the duty referred to did not exist between the foreman and the owner. To the existence of that relation it is essential that the master shall not only have control of the thing to be done but also direction of the manner of its doing. It would be unreasonable and against conscience to hold him responsible for the consequences of an act, the doing of which had been, by express provision of law, placed beyond his control.

The principle is well stated in Shearman & Redfield's work on Negligence, in the following language: "Where

a general manager of a department is appointed in obe-
dience to a statute, making such appointment com-
pulsory and making such manager expressly re-
sponsible and independent of his employer's control, such
employer is not liable for anything more than due care
in selecting him. He is not a vice principal, because he
is not really the agent of the principal." Id., vol. 1,
sec. 231. The same principle is stated in *De Forest* v.
*Wright,* 2 Mich., 368, in the following language: "Where
an employee is exercising a distinct and independent em-
ployment and is not under immediate control, direction,
or supervision of the employer, the latter is not respon-
sible for the negligence or carelessness of the employee."
It is also illustrated in cases which have arisen respect-
ing the common-law liability for the negligence of pilots
whom shipowners are compelled by law to employ. See
*Homer Ramsdell Transportation Co.* v. *La Campagnie
Generale Transatlantique,* 182 U. S., 406, 21 Sup. Ct.,
831, 45 L. Ed., 1155. In that case it was held that the
shipowner was not liable on the ground that he had no
control of the pilot. In discussing the question the court
said:

"At common law no action can be maintained against
the owner of a vessel for the fault of a compulsory pilot.

"In *Caruthers* v. *Sydebotham* (1815), 4 Maule & S.,
77, 85, Lord Ellenborough, in holding that the act of
the pilot was not the act of the master or mariners or
owners of the ship, said: 'Now, to make the pilot the
representative of the master, and consequently to exempt

Coal .& Coke Co. v. Priddy.

the underwriter from liability for his acts, it must be shown that there is a privity between the pilot and the master, so that the one may be considered as the representative or agent of the other. But does the master appoint the pilot? Certainly not. The regulations of the general pilot act impose a penalty upon the master of every ship which shall be piloted by any other person than a pilot duly licensed, within any limits for which pilots are lawfully appointed. And there is an exception of such places for which pilots are not appointed. But if the master cannot navigate without a pilot except under a penalty, is he not under the compulsion of law to take a pilot? And if so, is it just that he should be answerable for the misconduct of a person whose appointment the provisions of the law have taken out his hands, placing the ship in the hands and under the conduct of the pilot? The consequence is that there is no privity between them.'

" . . . In *Lucey* v. *Ingram* (1840), 6 Mees. & W., 302, 315, Baron Parke, delivering the judgment of the court of exchequer, spoke of the exemption of the master who was compelled to take a pilot, from liability by the common law, independent of statute, as follows: 'It may, indeed, be admitted that in many of the cases the judges in giving their judgments refer to the obligation of the master to take a pilot, as the ground on which his irresponsibility is founded; and no doubt that is the foundation, and probably the only foundation, on which

117 Tenn—12

it can rest independently of the statutes; but the language of the exempting clause in the last pilot act certainly carried the doctrine further, and it may well be conceived that this extension of the common-law doctrine was not accidental, but intentional.  The object of the legislature in establishing pilots has been to secure, as far as possible, protection to life and property by supplying a class of men better qualified than ordinary mariners to take charge of ships in places where, from local causes, navigation is attended with more than common difficulty.  To effect this object, it has in general been made the duty of the master of every ship, on arriving at any of the places in question, to take a pilot on board and to give up to him the navigation of the vessel.  The master, however well qualified to conduct the ship himself, is bound, under a penalty, in a great measure to divest himself of its control and to give up the charge to the pilot.  As a necessary consequence, the master and owners are exempted from responsibility for acts resulting from the mismanagement of the pilot.' "

The foregoing authorities sufficiently illustrate and enforce the point above suggested.

The case of *Smith v. Coal & Iron Company,* 115 Tenn., 543, 92 S. W., 62, cited by counsel for defendant in error, does not apply.  In that case the court was dealing with the act of 1881 which did not contain the following language appearing in the act of 1903, viz.:  "That said mine foreman shall not be subject to the control of the operator or owner in the discharge of the duties required

of said mine foreman by this act. It shall be the duty of the mine foreman or foremen to see that the provisions of this act and the other duties herein defined are faithfully discharged and carried out; and in case of his or their failure to comply with such provisons and upon conviction, he or they shall be subject to a fine of one hundred dollars ($100) each and imprisonment for a period of not less than ninety (90) days, at the discretion of the court."

Not only is the employment of a certificated mine foreman made compulsory upon the owner under a penalty for failure to do so, but the control of the mine foreman, in respect of the duties set out in the act, is taken from the owner and the foreman's faithful discharge of duty secured by the imposition of penalties. Under such a statute there is no ground on which to place the liability of the owner for the negligence of the foreman in respect of his failure to discharge the duties referred to.

We are of opinion, therefore, that the circuit judge committed error in refusing to grant the peremptory instruction. The result is the judgment of the court below is reversed, and the suit dismissed.