## WILMINGTON STAR MINING COMPANY *v.* FULTON.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 139.   Argued January 7, 1907.—Decided March 4, 1907.

It is an appropriate exercise of the police power of the State to regulate the use and enjoyment of mining properties, and mine owners are not deprived of their property, privileges, or immunities without due process of law or denied the equal protection of the laws by the Illinois mining statute of 1899, which requires the employment of only licensed mine managers and mine examiners, and imposes upon the mine owners liability for the willful failure of the manager and examiner to furnish a reasonably safe place for the workmen.

It is within the power of the State to change or modify, in accord with its conceptions of public policy, the principles of the common law in regard to the relation of master and servant; and, in cases within the proper scope of the police power, to impose upon the master liability for the willful act of his employé.

As construed by the highest court of that State, under the mining act of Illinois of 1899, a mine manager and mine examiner are vice-principals of the owner and engaged in the performance of duties which the owner cannot so delegate to others as to relieve himself from responsibility.

Where two concurring causes contribute to an accident to an employé, the fact that the master is not responsible for one of them does not absolve him from liability for the other cause for which he is responsible.

Where there is no evidence sustaining certain counts in the declaration as to defendant's negligence, he is entitled to an instruction that no recovery can be had under those counts, and where, as it was in this case, the refusal to so instruct is prejudicial error the verdict cannot be maintained, either at law or under § 57 of the Illinois Practice Act.

THE facts are stated in the opinion.

*Mr. William P. Sidley,* with whom *Mr. Arthur D. Wheeler* and *Mr. Charles S. Holt* were on the brief, for plaintiff in error:

Recovery can be had under this mining statute only when the defendant's act complained of is the proximate cause of the injury. *Odin Coal Co.* v. *Denman,* 185 Illinois, 418.

This statute in derogation of the common law must be

strictly construed, and no recovery should be permitted except for a violation of some duty clearly imposed by the act.

The duty of refraining from ordering miners into gaseous portions of the mine is nowhere laid upon the mine manager. On the contrary, § 18b would seem to clearly negative such a duty. It was error to charge the jury that the question of proximate cause turned upon whether or not there was gas in the mine which was necessary to his death, and without which his death would not have followed. The gas was merely the instrumentality producing death, equally necessary to that result whether Wilson's or decedent's act was the proximate cause of the explosion.

The jury were still further confused upon this important question by the further instruction of the court that they should take into consideration whether the gas being there or Wilson's order was the greater cause of his death; a comparison which had no proper place in the solution of the question.

As Fulton's act was in spite of a caution, and upon his own volition with knowledge of the conditions producing danger, he was engaged in an unlawful act contrary to the express prohibition of § 31 of the Mining Act, and such unlawful act having contributed to his death, barred the right of recovery herein.

A willful act, as used in the mining statute, means that the person performing the act knows what he is doing and intends to do what he is doing, and is a free agent. An act consciously performed is willfully performed under this statute as construed by the Illinois Supreme Court. *Odin Coal Co.* v. *Denman,* 185 Illinois, 413; *Carterville Coal Co.* v. *Abbott,* 181 Illinois, 502. As to construction of "willful," see *Southern Ry. Co.* v. *Carroll,* 138 Fed. Rep. 638; *Heland* v. *City of Lowell,* 3 Allen, 407.

There being evidence in the record from which the jury might have found Fulton's act to have been willful and unlawful under the statute, it was the defendant's right to have this question submitted to the jury under the form of instruction requested in that connection.

Defendant is entitled to an instruction to the effect that no recovery could be had if Fulton's death resulted in part from his own reckless disregard of consequences in view of his surroundings and the conditions in the mine as disclosed by the evidence, as such action on his part amounted to a willful act which effectually neutralized the effect of any willful act on defendant's part upon the same principle that ordinary contributory negligence on plaintiff's part is a defense to ordinary negligence on defendant's part.

The evidence did not support the allegation that an accident to the mine machinery had occurred by which the currents of air were obstructed or stopped, as there were no air currents in the mine at the time and no danger to the miners resulted from the occurrence testified to. The Mining Act must be strictly construed, being in derogation of the common law, and cannot be extended to cover the incident in question, the temporary loss of the monkey-wrench, by means of which the fan was customarily started. *Cole* v. *Mayne*, 122 Fed. Rep. 843; *Hamilton* v. *Jones*, 125 Indiana, 178; *Shaw* v. *Railroad Co.*, 101 U. S. 565; *Johnson* v. *Southern Pacific Co.*, 117 Fed. Rep. 466.

*Mr. Arthur J. Eddy*, with whom *Mr. P. C. Haley* and *Mr. E. C. Wetten* were on the brief, for defendant in error, submitted:

The case at bar is not subject to the constitutional objection raised by plaintiff in error for the reason that the declaration contains counts based on certain sections of the act obviously not repugnant to the Constitution of the United States even under the theory of plaintiff in error. *Chicago* v. *Lonergan*, 196 Illinois, 518; *Consolidated Coal Co.* v. *Scheiber*, 167 Illinois, 539, 543; *C. & A. R. R. Co.* v. *Anderson*, 166 Illinois, 572, 575; *Western Union Tel. Co.* v. *Ann Arbor R. R. Co.*, 178 U. S. 239, 243, 244; *Lampasas* v. *Bell*, 180 U. S. 276, 282; *Gibbs* v. *Crandall*, 120 U. S. 105, 108; *Atarin* v. *New York*, 115 U. S. 248, 257; *New Orleans* v. *Benjamin*, 153 U. S. 411,

424; *Gold Washing & Water Co.* v. *Keyes,* 96 U. S. 199, 203, 204.

Even if the court should be inclined to hold portions of the mining law unconstitutional, it would not necessarily invalidate the entire act, and if any count is based on a section held to be constitutional, it would be sufficient to sustain the action. *Loeb* v. *Columbia Township Trustees,* 179 U. S. 472, 490; *Diamond Glue Co.* v. *U. S. Glue Co.,* 187 U. S. 611, 617.

The Mining Act of Illinois is not repugnant to the Constitution of the United States. It has always been the policy of that State to guard with great solicitude the persons and lives of men employed in coal mining. The constitution of the State imposes upon the legislature the duty of passing laws to carry out this policy. Sec. 29, Art. 4, Const. of 1870; *Henrietta Coal Co.* v. *Martin,* 221 Illinois, 460. See also: *Sherlock* v. *Alling,* 93 U. S. 99; *Coal Co.* v. *Seniger,* 179 Illinois, 370; *Wells Coal Co.* v. *Smith,* 65 Ohio St. 70; Huffcut on Agency, 286; *Riverton Co.* v. *Shepherd,* 207 Illinois, 395; *Schmalstieg* v. *Coal Co.,* 59 L. R. A. 707.

In construing the Mining Act the Supreme Court of Illinois has sought to effectuate this purpose, and to protect the operative coal miner and to provide for those dependent upon him in case of his death through failure on the part of the mine owner, and his representatives, to fulfill the duties required by the statute. *C. W. & V. C. Co.* v. *The People,* 181 Illinois, 270, 273; *Carterville Coal Co.* v. *Abbott,* 181 Illinois, 495, 501; *Deserant* v. *Cerillos C. R. R. Co.,* 178 U. S. 409, 420; *Odin Coal Co.* v. *Denman,* 185 Illinois, 413, 417.

In the last case cited the court declared the statute in question was not a penal statute.

The fact that the west roadway was full of gas was the proximate cause of Fulton's death. None of the other acts and omissions complained of would have harmed him had plaintiff in error fulfilled its primary duty in regard to freeing the mine from gas and seeing that it was properly ventilated.

Proximate cause has been defined by the Supreme Court of Illinois in *Pullman Co.* v. *Laack*, 143 Illinois, 242, 260, 261.

Contributory negligence on the part of Fulton would not defeat the right of defendant in error to recover in this case. *Carterville Coal Co.* v. *Abbott*, 181 Illinois, 495, 502; *Henrietta Coal Co.* v. *Martin*, 221 Illinois, 460, 470; *Riverton Coal Co.* v. *Shepherd*, 207 Illinois, 395, 399; *O'Fallon Coal Co.* v. *Laquet*, 198 Illinois, 125, 129; *Spring Valley Coal Co.* v. *Rowatt*, 196 Illinois, 156, 159; *Pawnee Coal Co.* v. *Royce*, 184 Illinois, 402, 415; *Odin Coal Co.* v. *Denman*, 185 Illinois, 413, 419; *W. A. C. Co.* v. *Beaver*, 192 Illinois, 333; *Deserant* v. *C. C. R. R. Co.*, 178 U. S. 409, 420.

The jury were fully instructed as to the effect of a willful violation of the Mining Act by Fulton.

All the counts of the declaration were supported by evidence, and the issues raised were properly left to the jury, and if the evidence supported one good count of the declaration, that would be sufficient to sustain the action.

MR. JUSTICE WHITE delivered the opinion of the court.

On January 27, 1901, Samuel Fulton, while working as a trackman and mine laborer in a mine operated by the Wilmington Star Mining Company in Grundy County, Illinois, was killed by an explosion of mine gas. Minnie Fulton, the widow, on behalf of herself and children, brought this action against the mining company in a court of the State of Illinois to recover damages for the death of her husband. Because of diversity of citizenship the case was removed to the Circuit Court of the United States for the Northern District of Illinois.

The counts of the petition upon which the cause was ultimately tried were eight in number, and in each was set out a specified act of negligence averred to have been the proximate cause of the accident and to have constituted willful failure to perform specified statutory duties. In count 1 it was alleged that the mining company failed to maintain in the mine currents of fresh air sufficient for the health and safety

of Fulton. Count 2 charged the failure to maintain cross cuts in the mine at proper distances apart, to secure the best ventilation at the face of the working places. In count 3 the company was charged with having failed to build all necessary stoppings in a substantial manner to close cross cuts connecting the inlet and outlet air courses in the mine. In count 4 the negligence set up was the failure to have the place in the mine where Fulton was expected to pass and to work inspected before Fulton was permitted to enter the mine, to ascertain whether there were accumulations of gas therein. In count 5 it was charged that the mining company, with knowledge of the existence of an accumulation of dangerous gases in the mine and its unsafe condition when Fulton, in the course of his employment, entered the mine on the morning of his death, willfully failed and neglected to prevent Fulton from entering the mine to work therein before the dangerous gases had been removed and the conditions in the mine rendered safe, said Fulton not being then and there under the direction of the mine manager. In count 6 it was charged that the mining company, on the morning of the accident, had knowledge that a valve attachment of a certain steam pipe used to conduct steam generated for the purpose of running a ventilating fan in the mine had become accidentally broken or lost, whereby the air currents in the mine became obstructed and stopped, and a large quantity of dangerous gas was permitted to accumulate in the mine at the place where Fulton was required to pass and to work. And it was further charged that, although having such knowledge, the mining company willfully failed and neglected to order the withdrawal of Fulton from the mine and prohibit his return thereto until thorough ventilation had been established. In count 7 the negligence charged was that the mining company permitted Fulton to enter the mine before the mine examiner had visited it and seen that the air current was traveling in proper course and in proper quantity, and before the accumulation of dangerous gas, then in the mine, had been broken up or removed therefrom. In count 8

it was charged that the mining company had knowledge that accumulations of gas existed in the mine, yet it willfully failed and neglected to place a conspicuous mark at the place in the mine where accumulations of gas existed as a notice to Fulton and other employés to keep out, whereby Fulton failed to receive the statutory notice and warning of the existence of accumulated gas, and did not know of the dangerous condition of the mine when he proceeded to work at and near the place in the mine where such dangerous accumulation of gas existed.

To these various counts the defendant plead the general issue. The case was twice tried by a jury. On the first trial, at the close of the evidence for the plaintiff, the jury was instructed to find for the defendant. This judgment was reversed by the Circuit Court of Appeals for the Seventh Circuit. 133 Fed. Rep. 193. The second trial resulted in a verdict for the plaintiff and an entry of the judgment which is here assailed.

On the trial it was testified that the sinking of the shaft in the mine where Fulton met his death was commenced in the month of April or May, 1900. Fulton worked for several months at the mine before the accident, at first assisting in sinking the shaft. The mine is what is known as a long wall mine, in which, it was testified, cross cuts were not employed. Cross cuts are used in what is known as a room and pillar mine. In that class of mines parallel entries are run, and after proceeding a certain distance—usually sixty feet—a road is cut across, connecting the parallel entries to permit of a circulation of air. After going another sixty feet a new cross cut is made and the openings of the prior cross cut are stopped up, thus carrying the circulation of air to the new cross cut. The mine in question was thus intended to be constructed. From the bottom of the main or hoisting shaft towards the north, south, east and west radiated four main headings or roadways, and it was contemplated to construct a circular road connecting the outer ends of these four main roads so as to cause a complete circulation of air around the mine and through the

roadways. About three hundred feet to the eastward of the main shaft was situated an air or escapement shaft. At the time of the accident the roads radiating north, east and west had been completed, but the circular roadway had only been completed between the outer edges of the east and north roads. Gas usually made its presence known in the west roadway after going fifty or sixty feet from the bottom of the main shaft. For some time before the accident men were employed at or near the end of this road continuing the circular road towards the northeast, and Fulton performed the work of track laying. In consequence of the non-completion of the circular roadway and the absence of natural ventilation in the west roadway, a ventilating fan was used to force air through air boxes to the places where the men were working in that roadway, "so as to give them air and keep the gases out." Whilst there is some confusion in the description of the situation and operation of the ventilating fan we take it that it was as follows: The fan was situated at the bottom of the shaft and was operated by a small engine in close proximity to the fan. The steam to work this engine was carried down from the boilers above, the steam pipe passing down the main shaft to the fan engine at the bottom. To turn on the steam to this engine and set it in motion there was a valve controlled by a wheel. There was another valve by which the accumulation of condensed water could be let off so as to enable the apparatus to be reached by live steam. This valve was intended also to be moved by a wheel, but that appliance had not been put on, and, therefore, in order to turn the valve the use of a wrench was necessary. A wrench used for this purpose was kept near the fan.

The mine manager stopped the fan about four o'clock on Saturday afternoon. On the next day (Sunday) Fulton and the mine manager descended the shaft together. The fan had not started when they reached the bottom of the shaft. The mine manager attempted to start the fan, but could not find the wrench, and there was a delay of a minute or two

while he went up the shaft and secured a wrench. When the
fan was started the mine examiner and several other employés
who had descended the mine just ahead of Fulton and the
mine manager were with the latter in the immediate vicinity
of the fan. At that time, as testified to by the mine manager,
he believed there was gas in the west roadway. Soon after
the starting of the fan Fulton and a helper proceeded along
the west roadway with pit lamps—naked lights—on their
caps, pushing a car loaded with track material. In a few
minutes the explosion occurred which caused the death of
Fulton and seriously injured the helper. There was contra-
dictory evidence as to the instructions given by the mine
manager to Fulton at the time he started into the west road-
way. One version was that Fulton was told to wait awhile,
until an examination had been made by the mine manager
with a safety lamp. Another version implied from the evi-
dence was that Fulton, entirely of his own volition, proceeded
to the place where he was injured; and still another hypothesis
was that Fulton was directed to proceed with the work without
any caution. At the time of the explosion the mine manager,
mine examiner and others were in the south roadway.

After the entry of judgment the cause was brought direct
to this court on the ground that a constitutional right was
claimed in the court below and denied.

The errors assigned which have been argued at bar present
for consideration the following questions:

First, the constitutionality of the Illinois mining act of 1899
upon which this action was founded.

Second, the correctness of instructions to the jury on the
subject of the proximate cause of the accident in the event
Fulton went into the west roadway by direction of the mine
manager.

Third, the correctness of a refusal to instruct the jury to
return a verdict for the defendant if they found that "Fulton,
at the time he was killed, was engaged in a willful act which
endangered the lives or health of persons working in the mine

with him or the security of the mine or its machinery, and that such willful act on his part contributed to his death."

Fourth, the correctness of a refusal to instruct the jury that if the death of Fulton resulted in part from his reckless disregard of consequences in view of his own surroundings, the plaintiff could not recover.

Fifth, the correctness of the overruling of motions to strike out the second and third counts of the declaration, and of the refusal to instruct the jury that no recovery could be had on these counts, because no evidence had been introduced to support the same.

Sixth, the correctness of the refusal to give the following instructions:

"If you believe from the evidence that the decedent Fulton, just before the time of his death, entered the mine to work therein under the direction of the mine manager, Wilson, then you are directed to find the defendant 'not guilty,' even though you may further believe from the evidence that all the conditions of the mine had not been made safe at such time, as charged in the declaration."

Seventh, the correctness of the overruling of a motion to strike out the fifth count of the declaration and in refusing to instruct the jury that no recovery could be had under said count, because no basis existed in the evidence for the asserted liability.

Eighth, the correctness of the overruling of a motion to strike out the sixth count of the declaration and a request for an instruction that no evidence had been introduced of any neglect as to the fan or machinery whereby the air currents of the mine became obstructed and stopped.

Before considering these alleged errors, however, we must dispose of a motion to dismiss. It is urged that as the direct appeal to this court rests alone upon the assertion of the repugnancy of the Illinois mining act to the Constitution of the United States, and as the claim of repugnancy is alone based upon certain provisions of that act providing for licensing

mine managers and examiners, defining their duties and compelling mine owners to employ only licensed managers and examiners, the writ of error should be dismissed, because there is ground broad enough to sustain the judgment wholly irrespective of the provisions of the Illinois act just referred to, which are asserted to be repugnant to the Constitution of the United States. This proposition is based upon the contention that the first count of the declaration charges a violation of duty imposed by the statute directly upon the mine owner, irrespective of the requirements of the statute as to licensed employés. But issue is taken on behalf of the plaintiff in error in respect to the correctness of this contention, and it is insisted that the first count is open to the same objections which are urged against the others. We think the motion to dismiss is without merit, because there is color for the contention as to the unconstitutionality of the statute, as well in respect to the first as to the other counts of the declaration.

We come, then, to consider the first assigned error, viz., the constitutionality of the Illinois mining act approved April 18, 1899, in force July 1, 1899, entitled "An act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein." Chap. 93, Rev. Stat. of Illinois.

It is conceded that the statute in question has been authoritatively interpreted by the Supreme Court of Illinois as imposing upon mine owners responsibility for the defaults of mine managers and mine examiners, employés who are required by the statute to be selected by the mine owners from those holding licenses issued by the state mining board created by the statute. And it is an alleged incompatibility between such responsibility of the mine owner and the obligation imposed upon the mine owner to employ only persons licensed by the State, and the nature and character of the duties which the statute imposes upon them, upon which is based the asserted repugnancy of the statute to the Fourteenth Amendment.

Section 29 of article 4 of the Illinois constitution of 1870 is as follows:

"It shall be the duty of the general assembly to pass such laws as may be necessary for the protection of operative miners by providing for ventilation when the same may be required and the construction of escapement shafts, with such other appliances as may secure safety in all coal mines, and to provide for the enforcement of said laws by such penalties and punishments as may be deemed proper."

In carrying out this constitutional requirement the general assembly of Illinois has from time to time legislated for the protection of miners. The act of 1899, here assailed as repugnant to the Constitution of the United States, as said by the Court of Appeals for the Seventh Circuit, 133 Fed. Rep. 197, grew out of the desire "that every precaution should be taken against the unusual hazards and dangers incident to the inhabitancy of mines. It was intended, and intended rightly, to protect with all known expedients every person whose occupation required him to labor in these subterranean rooms and roadways."

The act is lengthy, covering 47 pages of print in the appendix to one of the briefs. In substance it created a state mining board, authorized that body to examine candidates for the position of state inspector of mines and to certify the names of the successful candidates to the governor, in whom was vested the power of appointment. Moreover, the statute fixed the qualifications of mine managers, hoisting engineers and mine examiners; required candidates for such positions to be examined by the state board and certificates to be furnished to those found competent, and made it unlawful in the operation of a coal mine to employ or suffer any person, other than one possessing the proper certificate, to serve as a mine manager, hoisting engineer or mine examiner. Section 16 prescribed in detail the duties of mine managers and miners; section 17 set forth the duties of hoisting engineers; and by section 18 the duties of mine examiners are prescribed. In-

terspersed, however, throughout the remainder of the act are found in sections relating to the subject of ventilation, powder and blast, place of refuge, etc., requirements to be observed in effect supplementing the sections prescribing in detail the duties to be performed by the employés above mentioned. We think the omissions of duty charged in the various counts in the declaration are embraced in those in terms laid upon the mine manager or mine examiner. Considering this act, the Supreme Court of Illinois, in *Henrietta Coal Company* v. *Martin*, 221 Illinois, 460, first commented upon the decisions in *Durkin* v. *Kingston Coal Co.*, 171 Pa. St. 193, and *Williams* v. *Thacker Coal & Coke Co.*, 44 W. Va. 599, which cases dealt with statutes which, in their general purpose, were similar to the Illinois act. The Illinois court declined, however, to hold, as was done in the cases referred to, that where a statute directly imposed duties upon a mine manager the negligence of such mine manager could not be imputed to the owner, and indeed that the owner could not be made responsible for the act of such employé without causing the statute to be unconstitutional. The Illinois court expressly held that under the Illinois mining act a mine manager and mine examiner were vice-principals of the owner, and were engaged in the performance of duties which the owner could not delegate to others in such manner as to relieve himself from responsibility. Observing that in a number of its former decisions the Illinois court had assumed the law to mean what it expressly decided in the *Henrietta case* it did mean, viz., that in respect to the duties devolved upon the mine manager and mine examiner, those persons stood for the mine owner and were vice-principals, performing those duties. The court said:

"The fact that the proprietor, if he employs men to act in these capacities, is required to employ those who have obtained the certificate from the state mining board is without significance. The purpose of that provision was, so far as possible, to guard against the possibility of the proprietor employing

incompetent, intemperate, negligent or disreputable persons, and not to enable the operator to shift to his employés his responsibility for the management of the mine.

"The object of the mining act, as we gather from its various provisions, is to protect, so far as legislative enactment may, the health and persons of men employed in the mines of. the .State .while they are in the mines. The principal measures prescribed for this purpose require the exercise of greater precaution and care on the part of the mine owner for the safety of the miners than was required by the common law. To hold that he may shift his liability to any person employed by him as examiner or manager who holds the certificate of the state mining board is to lessen his responsibilities and defeat, in great part, the beneficent purposes of the act. To hold him liable for a willful violation of the act, or a willful failure to comply with its provisions on the part of his examiner or manager, is to give force and effect to the statute according to the intent of its makers to prolong the lives and promote the safety and well-being of the miners."

Accepting this interpretation of the Illinois statute, and in view of the ruling in *Consolidated Coal Co.* v. *Seniger*, 179 Illinois, 370, 374, 375, that it is not obligatory upon a mine owner to select a particular individual or to retain one when selected if found incompetent, we think the act is not re- pugnant to the Fourteenth Amendment in any particular. In legal effect, duties are imposed upon the mine owner, customarily performed for him by certain employés, duties which substantially relate to the furnishing of a reasonably safe place for the workmen. The subject was one peculiarly within the police power of the State, and the enactment of the regulations counted upon we think was an appropriate exercise of such power. The use and enjoyment of mining. property being subject to the reasonable exercise of the police power of the State, certainly the rights, privileges and im- munities of a mine owner as a citizen of the United States were not invaded by the regulations in question, and the

imposition of liability upon the owner for the violation of such regulations being an appropriate exercise of the police power, was not wanting in due process. And even although the liability imposed upon the mine owner to respond in damages for the willful failure of the mine manager and mine examiner to comply with the requirements of the statute· was not in harmony with the principles of the common law applicable to the relation of master and servant, it being competent for the State to change and modify those principles in accord with its conceptions of public policy, we cannot infer that the selection of mine owners as a class upon which to impose the liability in question was purely arbitrary and without reason. And the views just expressed also adequately dispose of the contention that by the statute the mine owner was denied the equal protection of the laws.

The asserted error next to be considered relates to instructions to the jury on the subject of the proximate cause of the accident in the event Fulton went into the west roadway by direction of the mine manager. In the course of the charge to the jury the court said:

"If you believe from the evidence that Wilson, the mine manager, directed· Fulton to go into the west roadway, and that said Fulton did so in obedience to such order, and such order was the proximate cause of Fulton's death, without the giving of which Fulton· would not have been killed, then the jury is instructed that the plaintiff cannot recover in this case, and the verdict should be for the defendant. You will note there that it follows, if you believe that this instruction, if there was one, to Fulton was the proximate cause of his death, note that in passing upon that question you must determine whether, first, if there was gas there at that time; and whether, if there was, that was or was not the proximate cause of his death. Now by proximate cause is meant efficient cause. In other words, if the gas had not been there, would his death have followed? And was gas being there necessary to his death? Or was the instruction, if there was

one, there willfully sending him there, the thing which caused his death; which was the greater cause? That is a question of fact for you to determine.

\*     \*     \*     \*     \*     \*     \*     \*

"I said it was for them to determine what was the proximate cause if there was an order for this deceased to go into the mine, or whether it was the gas being there. Let the instruction be what I stated now, the last time; that covers it."

It is contended that the effect of the definitions of proximate cause, made as above, was to hopelessly confuse the jury. While it must be conceded that the instruction was greatly wanting in clearness, yet we think no prejudicial error was committed. Looking at the criticized instructions in connection with the context of the charge, it is clear that it was understood by all as importing that the mining company was at fault for the existence of the accumulated gas resulting in the explosion which caused the death of Fulton, since to have allowed the gas to accumulate was a disregard of the positive duty towards Fulton imposed by the statute. Now, conceding that the mine manager ordered Fulton into the west roadway, and conceding, further, that such order of the manager was one of the causes of the accident, for which no recovery could be had because not counted on the declaration, what follows? Simply this, that two concurring causes contributed to the death of Fulton—one the order of the mine manager, for which recovery could not be had under the declaration, and the other the neglect by the mine owner to perform his statutory duty to prevent the accumulation of the dangerous gases which led to the accident. But because one of the efficient causes, the order of the mine manager, under the pleadings, did not give rise to a right of recovery, it did not follow that therefore the owner was absolved from responsibility for the cause of the accident for which he was liable. *Washington & G. R. Co.* v. *Hickey,* 166 U. S. 521.

We next consider two contentions: *a.* That the trial court erred in refusing to instruct the jury to return a verdict for

the defendant if they found that Fulton, at the time he was killed, was engaged in a violation of the statute, which contributed to his death; that is, the doing of a willful act which endangered his life and the lives or health of persons working in the mine with him, and which jeopardized the security of the mine or its machinery; and, *b.* That the court also erred in refusing to instruct that if the death of Fulton resulted in part from his reckless disregard of consequences in view of his known surroundings, the plaintiff could not recover.

Leaving out of view the contention that the first requested instruction was rightly refused because too general, and bearing in mind that in an action to recover damages under the Illinois mining act a mine owner is deprived of the defense of contributory negligence, *Carterville Coal Company* v. *Abbott,* 181 Illinois, 495, 502, 503, and assuming that the refused instruction might properly have been given if the tendency of the proof justified it, we think the instruction was rightly refused, because we are of opinion that there was no evidence tending to show the doing by Fulton of a willful act of the character contemplated by the statute or a reckless disregard by him of his personal safety. While the evidence might have justified the inference that Fulton before entering the west roadway knew that it had not been cleared of gas, yet it cannot be inferred that Fulton and his helper suspected that gas had so permeated the roadway as to render it perilous to life to go to the point where the explosion occurred. The jury had been instructed that there could be no recovery if the proof established the contention of the mining company that Fulton entered the part of the mine in which he was killed against or contrary to caution given him by the mine manager, and if Fulton was permitted to enter the west roadway without caution it is impossible on this record to infer that the jury would have been justified in finding that it was obvious that to enter the west roadway was so hazardous as to give support to the conclusion that Fulton willfully and recklessly went to his destruction.

It is asserted that the court erred in refusing to give the following instruction:

"If you believe from the evidence that the decedent Fulton, just before the time of his death, entered the mine to work therein under the direction of the mine manager, Wilson, then you are directed to find the defendant 'not guilty,' even though you may further believe from the evidence that all the conditions of the mine had not been made safe at such time, as charged in the declaration."

The requested charge was based upon the last paragraph of that portion of section 18 (*b*) of the Illinois mining act, dealing with the duties of mine examiners, reading as follows:

"To post danger notices. (*b*) When working places are discovered in which accumulations of gas, or recent falls, or any dangerous conditions exist, he shall place a conspicuous mark thereat as notice to all men to keep out, and at once report his finding to the mine manager.

"No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe."

We construe this provision of the statute as relating to steps to be taken when a mine or a portion thereof is discovered to be unsafe and as relating to the necessary work to be done in the mine under the immediate supervision and direction of the mine manager to remedy the unsafe condition. As, however, there is no proof tending to show that Fulton in entering and working in the mine came under any of these conditions, we think the instruction was rightly refused.

The remaining assignments assert the commission of error by the trial court in overruling motions to strike out the second, third and sixth counts of the declaration and in refusing to instruct the jury that no recovery could be had under any of those counts, because no evidence had been introduced tending to establish the commission of the particular

acts of negligence charged in those counts.. Such counts as
we have seen related to .the failure to construct cross cuts
and stoppings in the mine and to an alleged defect resulting
from the absence of a wheel and the ' consequent necessity
of using a wrench for the purpose of opening a valve to allow
condensed steam to escape as a prerequisite to the movement
of the ventilating fan. We are constrained to the conclusion,
that prejudicial error was committed in these particulars.
We think it is extremely doubtful whether there was any
evidence in the record. even tending to establish that in a
long wall mine of the character of the one here in question
cross cuts and stoppings thereof were essential. But be this
as it may, certain is it that there is no evidence whatever in
the record tending to support the claim that the absence of
cross cuts and stoppings in the mine in question was in any
wise the cause of the accumulations of gas or the retention
of the accumulated gas from the explosion of which Fulton
was killed. We are also of opinion that there was nothing
in the evidence which would have justified the inference
that the absence of the wheel from the valve, forming part
of the mechanism to operate the ventilating fan, was the
proximate cause of .the presence of the gas in the west road-
way where Fulton was killed. The uncontradicted testimony
showed that but a very brief interval, a minute or two, elapsed
before a wrench was obtained, and the distance to the point
where the gas had accumulated precludes the possibility of
saying that the evidence tended to show that the absence of
the wheel could have been the proximate cause of the ac-
cident. Under this condition of things we find it impossible
to say that .prejudicial error did not result. *Maryland* v.
*Baldwin,* 112 U. S. 490, 493. And, of course, in a case like
the one we are considering we. cannot maintain the verdict,
as might be done in a criminal case upon a general verdict
of guilty upon all the counts of an indictment. *Goode* v.
*United States,* 159 U. S. 663. Nor does section 57 of the
Illinois Practice Act, chap. 110, Rev. Stat. Illinois, support

the contention that errors of the character of those we have just been considering must be treated as not prejudicial. The section relied upon is as follows:

"When an entire verdict is given on several counts it will not be set aside or reversed because of any defective count, if one or more of the counts be sufficient to sustain the verdict."

This section has been held not to relate to counts which are vitally defective, but as only providing that where a declaration consists of several counts, and some of the counts contain defects not vital and yet subject to be assailed by demurrer, a party cannot wait until after the close of the evidence at the trial and, *a fortiori*, after verdict, and then for the first time question the sufficiency of the counts. *City of Chicago* v. *Lonergan,* 196 Illinois, 518; *Consolidated Coal Co.* v. *Scheiber,* 167 Illinois, 539. This statute of course lends no support to the contention here made that where a jury is wrongfully permitted over the objection of the opposing party to take into consideration in reaching a verdict counts of a declaration which have not been supported by any evidence, and where it is impossible from the record to say upon which of the counts of the declaration the verdict was based, that the judgment entered under such circumstances can be sustained upon the theory that substantial rights of the objecting party had not been invaded.

*The judgment of the Circuit Court is therefore reversed, and the case remanded to that court for further proceedings consistent with this opinion.*