DUCKTOWN SULPHUR, COPPER & IRON CO. v. GALLOWAY et al.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1920.)

No. 3308.

1. MASTER AND SERVANT ⬥95½—STATUTORY MINE FOREMAN DEEMED SERVANT OF MINE OWNER.

Under Acts 1915 Tenn. c. 169, providing that a mine foreman must be employed in every mine, that he must have proper qualifications, and be certified by the proper state board, that he shall perform enumerated duties to keep the mine safe for workmen, and be criminally liable for breach thereof, and declaring in section 19 that the foreman shall be deemed the agent or representative of the owner or operator, and in view of the change from the similar Acts Tenn. 1903, c. 237, which provided for a mine foreman, and in section 20 declared that he should not be subject to the control of the owner, held that the foreman must be deemed the employé

of the owner or operator so the doctrine of respondeat superior applies in case of a miner injured by reason of the foreman's negligence, notwithstanding that the owner must make his selection from a restricted choice.

2. MASTER AND SERVANT ⟨key⟩95½—PROVISION FOR ASSISTANT DOES NOT PREVENT STATUTORY MINE FOREMAN FROM BEING DEEMED SERVANT OF OPERATOR.

The provisions in Acts Tenn. 1915, c. 169, that the duties of the mine foreman shall in his absence be performed by an assistant whom he shall select, etc., do not prevent the foreman himself from being considered a servant of the owner or operator, so that a miner injured by reason of the foreman's negligence may recover from the owner or operator, under the doctrine of respondeat superior.

3. MASTER AND SERVANT ⟨key⟩95½—STATUTORY MINE FOREMAN IS EMPLOYÉ NOTWITHSTANDING STATUTORY DUTIES.

The provision of Acts Tenn. 1915, c. 169, that the statutory mine foreman shall devote all his time to his statutory duties *held* not to prevent him from being considered an employé of the owner or operator, hence a miner injured through the foreman's negligent failure to make the mine safe, etc., may recover against the owner or operator under the doctrine of respondeat superior.

4. CONSTITUTIONAL LAW ⟨key⟩275(2)—MASTER AND SERVANT ⟨key⟩11—REQUIREMENT THAT MINE OWNER ENGAGE STATUTORY FOREMAN WHO IS DEEMED AN AGENT WORKS NO DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW.

Though Acts Tenn. 1915, c. 169, requiring the employment of a mine foreman in every mine to perform statutory duties to keep the mine safe for miners, makes the foreman the agent of the owner or operator, so that the owner or operator is liable under the doctrine of respondeat superior to a miner injured through the foreman's negligence, such act is not invalid as depriving the owner or operator of his property without due process either in violation of U. S. Const. Amend. 14, or the state constitution.

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by Luther and Ed. Galloway, administrators, against the Ducktown Sulphur, Copper & Iron Company. There was judgment for plaintiffs, and defendant brings error. Affirmed.

W. B. Miller, of Chattanooga, Tenn., for plaintiff in error.

James B. Cox, of Johnson City, Tenn., for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. While engaged as a miner in the Ducktown Company's copper mine, Galloway was killed by the fall of material from the roof. His administrators brought this action in the court below, and recovered a judgment, against which the company prosecutes this writ of error.

The negligence upon which the right of action depended was that of the defendant's mine foreman, who is said to have been careless in the duty of inspection. The chief question preserved and brought to this court is whether the mine foreman should be regarded as the agent of the defendant, so as to bring into action the respondeat superior rule; and this, in turn, depends upon whether the Tennessee statute is rightly to be considered as consistent with such theory of agency, and whether, when so considered, it is in conflict with either the due process clause of the Fourteenth Amendment to the federal

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Constitution, or the "law of the land" clause of the Tennessee Constitution (article 1, § 8). There is no occasion to consider the Tennessee Constitution separately, since the clause thereof which is invoked and the due process clause of the Fourteenth Amendment are, for the purposes of this case, substantially equivalent.

[1] The statute in question is chapter 169, § 19, of the Tennessee Acts of 1915.. It provides that a mine foreman must be employed in every mine; that he must have certain qualifications and must be "certified" by the proper state board; that he shall perform certain duties to keep the mine safe for the workmen; and that he shall be criminally liable for the breach of any of these duties. He is, undoubtedly, in certain respects, placed above and beyond the orders or direction of the mine owner; and the final question is whether the status of agent for the state in the exercise of its police powers, thus created for him by the statute, is so inconsistent with the status of agent for the mine owner in operating the mine as to defeat any inference of the latter agency, or, if agency must be assumed, as to make the taking of the mine owner's property to answer for the default of the foreman a violation of the constitutional provision.

The Tennessee act was first passed in 1903 (Laws 1903, c. 237), and was in substantially its present form, with the exceptions hereinafter noted. Section 20 of the act of 1903 contained the provision:

"That said mine foreman shall not be subject to the control of the operator or owner in the discharge of the duties required of said foreman by this act."

This act came before the Supreme Court of Tennessee, in Coal Co. v. Priddy, 117 Tenn. 168, 96 S. W. 610. It was held that the mine foreman was not the agent or representative of the owner in the performance of the duties required by the act, although he was employed by and subject to discharge by the owner, and although he was performing for the owner duties which, by general law, rested upon the owner. In reaching this conclusion, some force was put—we cannot be sure just how much—upon that part of section 20 above quoted; but the case was grounded chiefly on the rule announced by the Supreme Court in Homer Ramsdell Co. v. La Compagnie, 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155, and stated by Sherman & Redfield on Negligence (volume 1, p. 231, quoted by the Tennessee court) in this form:

"Where a general manager of a department is appointed in obedience to a statute making such appointment compulsory and making such manager expressly responsible and independent of his employer's control, such employer is not liable for anything more than due care in selecting him."

The Priddy Case may well involve only the meaning of the 1903 statute; it does not touch the constitutional question now urged.[1] Upon the subject of interpretation, however, we will be obliged to reach the same conclusion, unless, as to this feature, there is good reason for distinguishing the 1915 statute from that of 1903.

[1] Unless by implication from the statement "under such a statute there is no ground on which to place the liability of the owner, etc."

In the act of 1915 (section 19), the above-quoted words are omitted, and, in place thereof, we find:

"Said mine foreman is expressly declared to be the agent or representative of the operator or owner of the mine in the discharge of the duties required of said mine foreman by this act."

We thus have here old matter stricken out and new matter inserted. From the omission alone, we could not draw any satisfactory inference as to change in intent. It was plain enough, looking at other parts of the old statute, that, in the discharge of the duties required of the foreman by the act, he was not subject to the control of the owner; to make the declaration in so many words did not clearly add anything of substance; and to strike out this declaration did not subtract much. The same cannot be said of the new matter inserted. If we consider this insertion alone, the intent of the Legislature could not be more clearly expressed to create, or to affirm the existence of, the master and servant relationship with its ordinary incidents. In view of the construction which had been given to the earlier act by the Tennessee court and the plain words of the later act, we must infer that the Legislature, in the earlier act, observed the inconsistency between some of its provisions and the theory of agency by the foreman, and, to emphasize this inconsistency, inserted the express statement that the foreman was not subject to the owner's control, and that, in the later act, it observed an ambiguity as to whether this agency existed, and endeavored to solve that ambiguity by an express statement of intent. That intent, of course, should be given effect, unless to do so would be inconsistent with the general purpose and result of the act as evidenced by other provisions.

The other provisions especially relied upon to overrule the expressly stated intent are four: (1) That the owner must select the foreman from a small class, membership in which is confined to those approved by the controlling state authority; (2) that in the statutory matters the judgment of the foreman, and not of the owner, controls; (3) that, in the absence of the foreman, his place is taken by an assistant selected by him without any approval from the owner; (4) that the foreman is required to give his entire time to his statutory duties.

The first two may be considered together. Much reliance is placed upon the Homer Ramsdell Case, supra, the result in which was thought, by the Seventh Circuit Court of Appeals, to depend upon compulsion to select a particular person as distinguished from compulsion to select out of a class. Fulton v. Wilmington Co., 133 Fed. 193, 197, 66 C. C. A. 247, 68 L. R. A. 168. A careful study leads us to doubt whether the result stands on that distinction. From the opinion in the case, with the quoted certificate, and from the opinion at the District Court trial (63 Fed. 848), it appears that the New York statutes compelled an incoming boat to take a pilot, and had the color of directing acceptance of the first pilot who offered; that, upon the outgoing trip of the same boat, the master was compelled to take the same, or practically the same, pilot who brought him in, unless the master protested, in which case the pilot commissioners would select another for him.

Construing this statute, the New York courts had held (Gillespie v.

Zittlosen, 60 N. Y. 449, 451; and, of course, the federal courts intended to accept this construction, 182 U. S. 411, 21 Sup. Ct. 831, 45 L. Ed. 1155) that upon the inbound trip the master was under no obligation to accept the first pilot, but might select any licensed pilot whom he wanted, and whom he could get out of the whole class. The statutes, therefore, must be taken as providing that, when coming in, the master must take one of the class, but, when going out, he must take a previously chosen individual. The controversy regarding the liability of the boat for the negligence of the pilot arose out of the outbound trip, and therefore might have been decided as being a case where there was no right of selection; however, the Circuit Court of Appeals certified, and the Supreme Court considered, the matter as if there were no difference between the situation coming in and going out.

The question certified to the Supreme Court reached and covered the case of a boat coming in, where the right to select among the class existed; and both because the Supreme Court decided the whole question certified, and because it cites with approval (on page 416 of 182 U. S., on page 835 of 21 Sup. Ct. [45 L. Ed. 1155]) the extract from Story, where his conclusion is based on the absolute duty of the master to take some pilot, instead of piloting the boat himself, and without regard to the right of class selection, we do not think the opinion can be distinguished from the present case merely upon the ground that the mine owner may select from the whole class of certified foremen, and need not take the first applicant.

However, there is ample difference between the Homer Ramsdell Case and this, both in the fact that the statutes there did not attempt to create the master and servant relationship, and in the fact that the position of a pilot on a ship is very different from that of a foreman in a mine. By long-settled rules, the pilot supersedes the master in the entire matter of management, while this mine foreman supersedes the owner, at most, as to only one phase of the owner's rights and duties.

The argument that the owner cannot be liable because he neither selects nor controls the foreman is not entirely persuasive. We find the ordinary field or basis for the relation of master and servant in full existence. The duty of reasonable inspection, in order to keep the premises fairly safe, is universally accepted as the master's duty, and one to whom that duty is delegated continues to be his representative for whose acts of negligence he must respond. The owner makes his choice, when he employs the mine foreman—a restricted choice, it is true, but nevertheless a substantial right; and he may discharge his foreman at any time, when dissatisfied, unless he has contracted not to do so. In the presence of this suitable background, we are not convinced that the statute took away the control from the master so wholly and completely as to leave not enough of substance to support the respondeat superior rule.

Doubtless, if the owner thinks the place is safe and the foreman thinks it is not, it will be the latter's statutory duty to disregard the owner's instruction to do nothing about it—though, even then, the owner could measurably constrain the foreman's action by threat of discharge;

262 F.—43

but this is only one aspect of the situation. If the foreman thought the place was safe and the master thought it was not, we think it would be, as between them, the clear duty of the foreman to obey the master's instructions to make it safer. Neither does it appear that either the restriction to a class or the exaltation of the foreman's judgment as to safety is particularly important. Any man competent to be foreman ought to be, and probably is, given a certificate; and, in all the particulars involved, the owner would usually yield to the judgment of his skilled foreman, with or without any statute.

[2] The claim, which depends upon the possible substitution of an assistant, without the consent of the owner, is not without force; but neither by itself nor in connection with the other provisions is it sufficient to override the expressly stated intent. The bringing in of an assistant in such a way as to throw liability on the owner is an incident which may or may not occur, and whether such an assistant foreman would be within the legislative declaration of agency is a question that does not arise in this case. The possibility that there may be instances of insuperable obstacle to carrying out the declared theory of the statute does not forbid the application of that theory where the obstacle does not exist.

[3] The remaining provision relied upon is that the foreman is required to give all his time to his statutory duties, and that, since he would have no time remaining for the performance of duties directed by the master, it must be assumed that he is subject to no such duties; and since the owner may not control the foreman in his statutory duties, it is said that the owner has no power to control at all. This contention is of the same class; it has force, but not controlling force, as against the deliberate designation of the foreman as the owner's agent.

[4] Passing from the question of construction, we come, now, to that of constitutional powers; and, for that purpose of this decision, we assume that, in spite of the statutory attempt to make the foreman the agent of the owner, there might be such an utter lack of basis for this attempt that to recognize and enforce it would be to deny to the owner due process. We find that the Supreme Court, in Wilmington v. Fulton, 205 U. S. 60, 27 Sup. Ct. 412, 51 L. Ed. 708, has gone far towards covering this subject. In that case, a similar statute was involved; the Illinois court had construed it as intending to create the relationship with its attendant liabilities; that construction, the Supreme Court, of course, followed; and, upon the basis thus formed, it affirmed the constitutional power of the state to do what had been done. We do not find any satisfactory reason for thinking that the power did not exist here, if it did in that case. The distinctions which exist are those which we already discussed and which go rather more to the question of intent than to that of power, though they do have some bearing upon the latter aspect. It is probably true that the Tennessee law goes further than the Illinois law did in putting the foreman's statutory duties beyond the owner's control, and the Supreme Court put some reliance upon the state policy as declared by the state court—a background not present here—but the principle affirmed, on page 74 of 205 U. S., on page 417 of 27 Sup. Ct. (51 L. Ed. 708), is

ample to cover this case. The refusal to accept the. rule of the state courts of Pennsylvania and West Virginia (205 U. S. 72, 27 Sup. Ct. 416, 51 L. Ed. 708; and see Farmer v. Kearny, 115 La. 722, 39 South. 967, 3 L. R. A. [N. S.] 1105), and the adoption of the contrary Illinois view, are made to depend, we think, not on the varying degrees of control remaining in the owner, but rather on the idea that this class of duty belongs to the master, that he cannot delegate it, and that he cannot claim exemption merely because he is somewhat constrained in his choice of a foreman, and because the state has closely defined some of the duties and given its aid in compelling their performance.

The other errors alleged afford no basis for reversal. either because they are sufficiently covered by what has been said, or because they do not rest upon any exception properly taken below.

The judgment is affirmed.

