**SEABOARD OIL CO. v. CUNNINGHAM.**

No. 5976.

Circuit Court of Appeals, Fifth Circuit.

June 22, 1931.

322

SIBLEY, District Judge, dissenting.

Julian Hartridge, of Jacksonville, Fla., for appellant.

R. A. Hendricks, of Miami, Fla. (Hendricks & Hendricks, of Miami, Fla., on the brief), for appellee.

Before FOSTER, Circuit Judge, and HUTCHESON and SIBLEY, District Judges.

FOSTER, Circuit Judge. ·

This is a suit to recover damages for malicious prosecution and false arrest. Demurrers to the complaint were overruled, and issue was joined on a plea of not guilty. The case was tried to a jury, and resulted in a verdict in favor of appellee for $5,318, on which judgment was entered. Error is assigned to the action of the court in overruling· the demurrers.

■■■■ Undoubtedly it is essential for the plaintiff, in an action for false arrest or malicious prosecution, to allege and prove both malice and want of probable cause, but malice may be inferred from want of probable cause. Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116.

The declaration in five counts, with sufficient detail to identify the proceedings, substantially alleges that appellant, through an authorized agent, instigated three criminal prosecutions against appellee charging him with issuing worthless checks; that he was arrested and held to bail; that he waived preliminary examination in one cause and was remanded for trial; that he was acquitted by a jury in one case and the other two were nolle prosequied; that he was damaged; and that the prosecutions were without probable cause and malicious.

■■■■ It is contended that, because appellee waived examination and was committed for trial, probable cause was conclusively shown; and that the allegation that the prosecution was without probable cause and malicious is a mere conclusion of the pleader and insufficient.

While there are authorities to the contrary, the rule is well established that a general allegation that the prosecution was malicious and without probable cause is an averment of ultimate facts, and is sufficient. It is difficult to see how the pleader could allege specific facts, without attempting to negative every possible defense before it was raised, which he is not required to do. General allegations of fraud or knowledge of the innocence of the accused would add nothing material to the complaint. Nor does the allegation that the appellee waived preliminary examination and was committed for trial destroy the general averment. That fact would be merely prima facie evidence of probable cause. Stainer v. San Luis Valley Land & Mining Co. (C. C. A.) 166 F. 220; 38 C. J. 464, § 127B. It was not error to overrule the demurrers.

Error is assigned to the refusal to direct a verdict for the defendant at the close of the evidence and to a certain portion of the charge given. These may be considered together.

The following facts appear without dispute: Cunningham was the proprietor of a gasoline filling station in Miami, Fla., conducted in the name of the Tamiami ·Auto Supply, Inc. The management of the station was intrusted to Roy E. Shaw, an employee. Cunningham had another place of business across the street from the station. Shaw purchased all the supplies needed, and on his approval the bills were paid by Cunningham by check. Cunningham bought all his gasoline and other petroleum products from the Seaboard Oil Company. He was prohibited from buying from any one else by a condition of the·lease of the station. Granberry was the district manager of the Seaboard Oil Company. Keener was the local manager or agent. Huffman was the bookkeeper and Brooker was the tank wagon driver. Cunningham issued three checks, dated May 23, May 24, and May 25, 1929, on the Third National Bank of Miami, payable to the Seaboard Oil Company, signed by the Tamiami Auto Supply, Inc., by himself as general manager. These checks were in payment for supplies purchased, and were given to Brooker, who made the delivery. They were deposited by the Seaboard Oil Company in the Bank of Bay Biscayne. In the usual course of clearance payment was refused

for want of sufficient funds. On or about May 25, 1929, Granberry and Keener consulted Menser, assistant county solicitor of Dade county, Fla., about the dishonored checks. On or about the 1st day of June Granberry and Keener also consulted Hargrett, a practicing attorney, about the same checks. A notice in statutory form was prepared by Hargrett and served on Cunningham advising him that the following checks had been dishonored, to wit, checks dated May 20, May 23, two on May 24, and four on May 25, 1929, for the following amounts respectively: $73.92, $133.34, $141.02, $23.50, $13.18, $120.74, $69.08, $7.74, a total of $582.50. Thereafter, on June 3, 1929, Keener made affidavit before a justice of the peace charging Cunningham with violating section 7920, Compiled General Laws of Florida 1927. This charge was based on the check for $133.34, dated May 23, 1929. Cunningham was promptly arrested on this charge and held to bail for trial before the criminal court of Dade county. On June 8, 1929, Taylor, county solicitor, filed two informations against Cunningham, based on the checks dated May 24, for $141.02, and May 25, for $120.74, charging violations of section 7922, Compiled General Laws of Florida 1927. Cunningham was also arrested on these two informations. He was put on trial on one of the informations, and was acquitted by the jury, whereupon the assistant county solicitor nolle prosequied the other two charges.

Appellant, the Seaboard Oil Company, contends that, notwithstanding the termination of the prosecutions favorably to Cunningham, there was probable cause, and it acted upon the advice of counsel. However, appellee, Cunningham, contends that there was want of probable cause because he had an agreement with the Seaboard Oil Company to accept his checks, some of them postdated, and, if they were not paid when first presented, to hold them and redeposit them, when they would be paid. The evidence on these points is in conflict. We may briefly review it.

Shaw testified that he went to work for Cunningham about March 1, 1929; that on March 5 he had a conversation with Granberry about the financial condition of the Tamiami Auto Supply, Inc., and told him to "go easy with us until we get started"; that Granberry knew that they did not have funds and had had lots of checks turned down; that, if one was turned down, it would be re-

deposited and taken care of on the redeposit; that the three checks upon which Cunningham was prosecuted were given under the same understanding and agreement that the checks prior to that time had been given; that the checks turned down and redeposited were always made good; that there was no express agreement, but the Seaboard Oil Company had never stopped them from doing business in that way; that a check for part payment of the account had been sent to the Seaboard Oil Company at Jacksonville and had been refused; that, if the checks upon which Cunningham was prosecuted had been redeposited, they would have been paid in the usual manner; that Granberry knew that he only approved the bills and had no authority to draw checks; that Granberry had no right to make demand upon him for payment of the checks. In general, the testimony of Cunningham confirmed Shaw as to the method of doing business.

Granberry testified that he did not have any agreement with Cunningham or Shaw to accept checks in payment of merchandise and not as cash, to be redeposited if not paid; that all the credits went through the Jacksonville office; no one was authorized to extend credit but himself; that they had threatened prosecution of Cunningham on account of prior checks, but no prosecution was ever instituted; that he had to discontinue to take checks and demanded cash; that Shaw had asked him not to do that, as it worked a hardship on them, and he would see that no more checks were turned down; that he had never knowingly taken a postdated check.

Keener and Huffman also testified that there was no agreement such as outlined by Shaw, and that neither of them had ever taken a postdated check.

Brooker, who made deliveries and received the checks, testified that he looked at each check to see if it was postdated; that he had never taken a postdated check; that he would make deliveries in the morning and go across the street to Cunningham to get the check; that, if Cunningham was not there, he would return in the afternoon or the next day.

To rebut the testimony of Brooker and Huffman, thirty-four checks were offered in evidence. Indorsements on the backs of these checks indicated that all except one had been postdated, as they were deposited prior to the date shown on the face. Twenty-six of these checks were dated from January 18 to

March 6. This last check was deposited on March 4, a day before Shaw had his conversation with Granberry. Seven of the checks were dated from March 5 to March 12, the day of the said conversation or subsequent thereto. One check was dated May 8, and apparently was not postdated. At any rate, it was not deposited until May 10. It was then dishonored and was redeposited May 17 and was paid May 20, the same date as the first check included in the notice of dishonor set out above. It was not shown whether the checks included in the said notice were postdated. However, it may be presumed that some of them were, as Granberry and Keener would hardly have complained to the county solicitor on May 25 about the nonpayment of a check dated that day or even a day or two before.

Evidence was offered to show malice. Shaw testified that Granberry made an appointment with him and Cunningham; that he kept it with Shaw, but declined to see Cunningham and said, "to Hell with Cunningham. I am going to give him the works." Cunningham testified Granberry was present when he was arrested and took him to jail in his automobile. Granberry did not deny the above statement to Shaw, and said he took Cunningham and the arresting officer to jail merely as an accommodation to the latter.

It is not disputed that both Hargrett and Menser, when consulted by Granberry and Keener, were told that the transactions with Cunningham were strictly cash and no credit at all was extended. And they were not told of any agreement to accept checks and redeposit them if not paid when first presented. On cross-examination, Menser testified that, if he had been told of a custom to accept postdated checks and redeposit them, his advice would have been the same.

We may briefly review the law under which Cunningham was prosecuted.

Section 7920 makes it a felony for any person to give any check, either in his own behalf or as an agent for another, in payment of goods or other thing of value, the title or possession of which is transferred upon the faith of payment of the check, and shall not, at the time of giving such check, have sufficient money for its payment on deposit with the bank upon which drawn, and shall not within twenty-four hours after written notice of the presentation and nonpayment of the check, make full and complete restitution by returning the consideration.

Section 7922 makes it unlawful for any person to simply draw or utter to another any check without there being sufficient funds on deposit, or to his credit, with the drawee named to cover payment of same upon presentation within a reasonable time after negotiation. This section has a proviso that it shall not apply to any check where the payee or holder has been expressly notified prior to the drawing or uttering of same that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment.

Neither of these statutes by express words makes an intent to defraud an element of the crime. However, the general rule is that in all statutory crimes involving moral turpitude criminal intent is an implied, necessary ingredient. The rule is thus stated by Bishop: *"Evil Intent.*—A statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act. * * * " Bishop on Statutory Crimes (3d Ed.) § 132.

We are not advised of any decision of the Supreme Court of Florida construing the statutes above referred to differently to the general rule. On the contrary, it would seem that the rule is recognized as elementary. The court has held that no offense is committed where the drawer of the draft has reason to believe, from an existing contract or previous dealings with the firm upon which the draft is drawn, that it will be paid whether he at the time had sufficient on deposit or to his credit to insure such payment. Whitney v. State, 63 Fla. 53, 58 So. 230; Denton v. State, 66 Fla. 87, 62 So. 914; Wolfe v. State, 76 Fla. 168, 79 So. 449.

As applicable to the proviso of section 7922, it is elementary that personal knowledge is equivalent to express notice. 46 C. J. 540, § 9 (b).

While it is evident that there was no express agreement between the parties as to the taking of postdated checks or to redeposit checks if not paid when first presented, an implied agreement would be sufficient, and could be shown by circumstances and a course of conduct. The rule is clearly stated by the Supreme Court in Webster v. Upton, 91 U. S. at page 68, 23 L. Ed. 384, as follows: "To constitute a promise binding in law, no form of words is necessary. An implied promise is proved by circumstantial evidence; by

proof of circumstances that show the party intended to assume an obligation."

■ The evidence was in direct conflict, but, if that were resolved in favor of Cunningham, it would support the conclusion that the Seaboard Oil Company had agreed to accept his checks with knowledge that they might not be good, and, if that condition existed, to extend credit until such time as they were paid on redeposit. In that contingency the act of Cunningham in giving the checks upon which he was prosecuted did not constitute an offense under either statute. Certainly there was no offense under section 7920. The three prosecutions were alleged in separate counts of the complaint. It was necessary to sustain the verdict that proof be made as to only one count.

■ In a clear case, on undisputed facts, probable cause is a question of law for the court. Brown v. Selfridge, 224 U. S. 189, 32 S. Ct. 444, 56 L. Ed. 727. But where the evidence is in substantial conflict or reasonable men may draw different conclusions from it, probable cause is a question for the jury. Of course, it is the duty of the court to instruct the jury as to what facts will constitute probable cause or want of it, leaving it to the jury to pass upon the credibility of the witnesses and find the facts. Sanders v. Palmer (C. C. A.) 55 F. 217; L. Bucki & Son Lumber Co. v. Atlantic Lumber Co. (C. C. A.) 121 F. 233; Blakely v. Greene (C. C. A.) 24 F.(2d) 676.

■ Advice of counsel is a good defense to an action of malicious prosecution or false arrest, whether there be probable cause or not. However, it is not available unless the defendant has fully and clearly, in good faith, stated to counsel all the facts bearing upon the guilt or innocence of the accused. 38 C. J. 432, § 28; 18 R. C. L. 47, § 29. Whether the defendant has fully and clearly stated the facts to counsel in seeking his advice is also a question for the jury, under proper charge of the court. Walton Trust Co. v. Taylor (C. C. A.) 2 F.(2d) 342; Daniel v. Pappas (C. C. A.) 16 F.(2d) 880.

■ The question presented to the jury was not whether appellant's agent had consulted counsel, nor what advice counsel would have given on a full disclosure of all the facts. It was simply whether all the facts were disclosed when seeking advice. It is undisputed that both Hargrett and Menser were told that the transactions were strictly cash. This was not true if the conflict in the evidence was resolved in favor of Cunningham. And they were not told of an agreement to redeposit checks, a fatal omission, if there was such an agreement. As error is not assigned to the charge of the court on this point, we assume that the jury was correctly instructed as to the law.

It was not error to submit the case to the jury.

■ The portion of the charge objected to, as appears by the record, is as follows: "On the other hand, there is evidence here by the witness Shaw that he had some conversation with the manager of this defendant company, and that it was understood that the plaintiff could give and they would accept checks that were drawn on the bank when there was not sufficient funds to pay it. To my mind, gentlemen, that is the important phase of this case for you to consider. The witnesses for the defendant deny that. They say there was no such agreement. There was no credit allowed by this defendant of any kind. Each delivery was a separate and distinct transaction, goods were delivered and at the time a check was given. Now, you must determine which one of those witnesses you are going to believe and which one is true. While the Court, under the law, is the judge of what is a probable cause of the issuance of a warrant, it is the providence of the Jury to pass upon the facts and that is the question I am submitting to you in this case. If you believe by a preponderance of the evidence that there was any understanding between this plaintiff and defendant that that defendant knew that there was not sufficient money in the bank to meet these checks and took them with that understanding, then when he made this affidavit there was probable cause. It is for you to determine whether or not it was the understanding between these people. You must believe that by a preponderance of the evidence. If you do not believe them by a preponderance of the evidence, then there was not probable cause and you should find for the defendant."

This portion of the charge is rendered ambiguous by the apparent misplacement of the word "not." We are not advised whether this was the result of a clerical error in transcription or a lapsus linguæ on the part of the judge. The entire charge is not included in the record, as it might have been by order of the court, so we are in the dark as to whether the ambiguity was cured by the other portions of the charge. If the charge was actually given as above quoted, counsel for either side could have easily corrected it by calling the court's attention to it specifically.

Apparently this was not done. However, appellant cannot complain of the charge. Regardless of how the jury resolved the conflict of evidence, the charge was not prejudicial to appellant. Taking the view most favorable to appellant, we may disregard this technicality (Judicial Code, § 269 [28 USCA § 391]) and assume that the word "not" was verbally given in its proper place, and that the jury was in fact told that, if the agreement existed, there was not probable cause; but that, if there was no agreement, probable cause was shown. On that assumption the charge was not error.

Other assignments of error are immaterial and without merit and require no discussion.

The record presents no reversible error. Affirmed.

SIBLEY, District Judge (dissenting).

I dissent from the judgment of affirmance. The fourth count, if treated as one for malicious prosecution, does not sufficiently allege that the prosecution had terminated and favorably to the plaintiff, and the general demurrer to it on this ground should be sustained. If, as both sides contend and as I think, it was intended to be a count for false imprisonment, that part of it which alleges the personal malice of the agent of the defendant as an aggravation of the false imprisonment should have been stricken on the special objection that the corporation was not liable on account of this aggravation. Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101, 13 S. Ct. 261, 37 L. Ed. 97. The verdict was expressly rendered on all four counts, and it is impossible to tell what influence the fourth count and the evidence submitted under it had in fixing its amount. A new trial is the necessary result of the errors in dealing with the fourth count. Bond v. Dustin, 112 U. S. 604, 5 S. Ct. 296, 28 L. Ed. 835; Wilmington Mining Co. v. Fulton, 205 U. S. 60, 27 S. Ct. 412, 51 L. Ed. 708; Gompers v. Buck's Stove & Range Co., 221 U. S. 440, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Toledo Newspaper Co. v. United States, 247 U. S. 421, 38 S. Ct. 560, 62 L. Ed. 1186.

On Application for Rehearing.

PER CURIAM.

In the opinion of a majority of the court no ground sufficient to warrant the granting of a rehearing herein appears. The application for a rehearing is denied.