## SANDERS et al. v. PALMER.

(Circuit Court of Appeals, Second Circuit.  April 18, 1893.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—PRIVATE MOTIVE.
   In an action for malicious prosecution, however malicious may have been the private motives of the defendants in prosecuting the plaintiff upon a criminal charge, they are protected in doing so if there was probable cause to believe him guilty.

2. SAME—PROBABLE CAUSE—PROVINCE OF COURT AND JURY.
   In such an action, if the facts are undisputed, or clearly established, it is for the judge to determine whether they constitute probable cause, and direct the jury accordingly; and when the facts are disputed it is the duty of the court to instruct the jury what facts, if established, will constitute a probable cause for the prosecution, and to submit to them only the question as to the existence of these facts.

3. SAME—PROBABLE CAUSE—LARCENY—BAILEE OF PROPERTY.
   Plaintiff rented of defendants a farm, for a term of years. Before the term expired, defendants commenced proceedings to dispossess him. Pending these proceedings, plaintiff rented a neighboring farm, and caused certain logs and posts to be removed thereto from defendants' farm. On the complaint of defendants, plaintiff was arrested for larceny of the logs and posts, and an indictment was found against him, but on trial he was acquitted. He then commenced an action for malicious prosecution. He gave evidence tending to show that he cut the posts on an adjoining farm, belonging to defendants, and carried them to the farm he occupied, under an arrangement with defendants by which he was to use them to repair the fences. There was also evidence that the logs were cut by him on the leased farm to clear up one of the lots, upon the understanding that he was to have them for his trouble. Evidence was given for defendants

tending to show that the posts and the logs were not cut by plaintiff, but were on the farm when he went into occupation of it; having been cut by a former tenant, and piled in various places for defendants' use. *Held*, that the judge properly refused to direct a verdict for defendants, as the plaintiff was a bailee of the property, if the testimony given for him was true, and as the truth or falsity of the plaintiff's contention was necessarily within the actual knowledge of defendants.

4. SAME—PROBABLE CAUSE—INSTRUCTIONS.

Under the circumstances, defendants were entitled to an unqualified instruction that if, as the testimony for them tended to show, the jury believed that plaintiff was not a bailee of the property at the time he carried it away, and appropriated it to his own use, plaintiff had not established want of probable cause, and it was error to leave the jury to decide whether the facts proved constituted probable cause.

Shipman, J., dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

At Law. Action by John E. Palmer against Charles W. Sanders and others for malicious prosecution. Verdict and judgment for plaintiff. Defendants allege error. Reversed.

Robt. D. Benedict, for plaintiffs in error.
John W. Boothby, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiffs in error were defendants in the court below in an action for malicious prosecution founded upon the arrest and trial of the plaintiff upon a charge of larceny. It appeared upon the trial that the plaintiff was arrested June 9, 1889, upon a warrant issued by a magistrate of Middlesex county, N. J., based upon a complaint made by the defendant Charles W. Sanders, which stated, in substance, that the plaintiff had feloniously stolen and taken away 120 red cedar posts, and 16 trunks of felled red cedar trees, the goods and chattels of Charles W. Sanders. On the next day an examination was had before the magistrate, and after a hearing he committed the plaintiff for trial, and admitted him to bail. At the September term of the Middlesex oyer and terminer an indictment was found against him by the grand jury; and on the trial of that indictment, in October, 1889, the plaintiff was acquitted. Thereafter the present action was brought. The facts shown were these: In March, 1888, the plaintiff rented of Charles W. Sanders a farm in Middlesex county, known as the "Sanders Farm," for a term of five years, and shortly after went into occupation as a tenant. In February, 1889, proceedings were taken by Mr. Sanders to dispossess him, and pending these proceedings he rented another farm near by, known as the "Jacques Farm." Shortly before the making of the criminal complaint against him, he caused to be removed from the Sanders farm to the Jacques farm the posts and logs mentioned in the complaint. The defendants, who lived at a distance, were informed by anonymous letters that the plaintiff had removed these posts and logs. Thereupon they consulted Mr. Shafer, a lawyer, who had been their professional adviser. He advised them to visit

the Jacques farm, and ascertain the facts in respect to the removal of the posts and logs. They did so, accompanied by Mr. Mead, a real-estate agent. They found the posts and logs at different places on that farm, and saw that some of them had already been used for making fences. Plaintiff was absent, but they ascertained from his hired man, then on the place, that he had brought the posts and logs there by the plaintiff's directions. They then returned to Mr. Shafer's office, informed him what had been ascertained, and were advised by him that there was a sufficient case for the arrest of the plaintiff for larceny. Thereupon the complaint was made, and laid before the magistrate who issued the warrant. At the examination before the magistrate, after the testimony for the prosecution was closed, the plaintiff, at the suggestion of his counsel, made a statement in exculpation of the charge. Among other things, he said that he had supposed he had a claim on the posts for the labor of getting them out, and that he had removed them under the advice of his counsel. His counsel immediately contradicted him, and stated to the magistrate that he had never given the plaintiff such advice. After the finding of the indictment, and before the trial thereon, the plaintiff returned the posts and logs to the Sanders farm. At the present trial, evidence was given for the plaintiff tending to show that he cut the posts upon an adjoining farm of Mr. Sanders, known as the "Tappen Farm," and carried them to the Sanders farm, under an arrangement with Sanders by which he was to use them for repairing the fences. By the terms of his lease he was to keep the fences in repair. There was also testimony tending to show that the logs were cut by him on the Sanders farm to clear up one of the lots, upon the understanding with Sanders that he was to have them for his labor. The plaintiff admitted the untruth of the statements made by him before the magistrate. Evidence was given for the defendants tending to show that the posts and logs were not cut by plaintiff, but were there on the Sanders farm when he went into occupation of it, having been cut by a former tenant, and piled in various places for the use of Mr. Sanders. There was evidence to authorize the jury to find that the criminal proceeding was begun by the defendants with the motive of getting the plaintiff out of possession of the Sanders farm. On the other hand, there was evidence to authorize them to find, not only that the defendants had reasonable and probable cause to believe that the plaintiff had been guilty of larceny, but also to find that the plaintiff was guilty of the offense. At the close of the testimony the court refused, as requested by the defendants, to direct the jury to render a verdict for the defendants upon the ground that there was not sufficient evidence of want of probable cause, or of malice. The defendants excepted to this ruling. The trial judge was then requested by the defendants to instruct the jury that if the defendants used due care, and honestly stated the facts as they understood them, and believed them to exist, to their counsel, and honestly acted under the advice of counsel, with no intent to injure the plaintiff, in violation of the law, then the jury

should find that there was no malice, and their verdict should be for the defendants. The trial judge instructed the jury substantially as thus requested. He was also requested by the defendants to instruct the jury, in substance, that if they found that the defendants, in view of the facts which had come to their knowledge at the time of making the complaint, had probable cause to believe the plaintiff guilty on grounds that would have satisfied a reasonable person, acting with reasonable care, then their verdict should be for the defendants. The court instructed the jury, with reference to this request, that they were to decide whether the defendants had reasonable grounds for starting the prosecution, and whether they started it honestly or maliciously, and that the plaintiff must make out malice and a want of probable cause; that if the defendants, when they consulted Mr. Shafer, omitted to state material facts, or unfairly·stated their case to him, then want of probable cause had been shown by the plaintiff. The defendants excepted to this instruction, and also to the refusal of the judge to instruct the jury as requested upon the question of probable cause. The jury rendered a verdict for the plaintiff.

We have not deemed it necessary to consider any of the numerous exceptions taken upon the trial, as to which error has been assigned, except those to the refusal of the trial judge to direct a verdict for the defendants, and to his instructions upon the question of probable cause, and his refusal to instruct upon that question as requested by the defendants.

However malicious may have been the private motives of the defendants in prosecuting the plaintiff upon the criminal charge, they were protected in doing so, provided there was probable cause to believe him guilty of the offense. Mitchell v. Wall, 111 Mass. 492; Munns v. Dupont, 3 Wash. C. C. 37; Foshay v. Ferguson, 2 Denio, 617. Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged. Upon the trial· of an action for malicious prosecution, where the facts are in doubt, or depend upon conflicting testimony, the question of probable cause is a mixed one, of law and fact, to be determined by the jury under the instructions of the court. But if the facts are undisputed, or clearly established, it is for the judge to determine their legal effect, and direct the jury accordingly. In other words, whether the circumstances alleged to show probable cause, or the contrary, are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law. When the facts bearing upon that question are disputed, it is the duty of the court to instruct the jury what facts, if established, will constitute a probable cause for the prosecution, and to submit to them only the question as to the existence of those facts. Bulkeley v. Keteltas, 6 N. Y. 384; Besson v. Southard, 10 N. Y. 236; Stewart v. Sonneborn, 98 U. S. 187.

It was not disputed that, pending the proceedings to remove the plaintiff from the Sanders farm, he caused the posts and logs men-

tioned in the criminal complaint to be taken from that farm to the Jacques farm, which he had recently hired. It was not disputed that all of this property had been previously the property of Charles W. Sanders. It was not disputed that the plaintiff had never asserted any title or claim of right to the posts to Mr. Sanders, or any person representing him, nor any lien or claim thereon for his labor in respect to it. It was not disputed that he caused the property to be removed without asking permission, and without the knowledge of Mr. Sanders, or any person representing him. It was not disputed that he had appropriated the property to his own use. It was clearly established upon the trial that he had appropriated part of it permanently, by using the posts for building fences upon the Jacques farm. It was not disputed that he had no title to the posts, or claim of right to them. He knew, as appears by his own testimony, that he had no right to use them except for the purpose of repairing the fences on the Sanders farm. It was undisputed that all these facts were known to the defendants when they applied for the warrant. But the fact was in dispute whether the logs and posts were upon the Sanders farm before the plaintiff became a tenant, and whether all of them were not cut by him,—the posts, pursuant to the arrangement that they were to be used by him in repairing fences; and the logs, pursuant to the agreement by which they were to be his for the labor. If the logs and posts were cut by him, and had always been in his possession, under such an arrangement as he testified to, there was not probable cause for his prosecution; and upon such facts he could not technically be guilty of larceny, however dishonest or fraudulent his conduct may have been in appropriating the property to his own use. According to this theory, he was a bailee, and at common law his acts would be but a breach of trust. Whether he could have been pursued for embezzlement under any of the statutes of New Jersey is a doubtful question, (1 Rev. Laws, § 44, par. 162,) and need not be considered. The fact whether the plaintiff had ever been in possession of the property as bailee was one within the personal knowledge of the defendants. One of them knew whether it was true, or not, that there had been such an agreement as was testified to by the plaintiff in regard to cutting the posts and logs; and, upon the theory that they were acting in concert, the knowledge of one of the defendants was imputable to the other. If they had been strangers to the agreement the question might have arisen whether there was any reasonable cause to believe that the plaintiff was a bailee; but, as it was, they were chargeable with knowledge of the fact, and, because of its existence, that he was not amenable to the charge of larceny. Because the vital fact, without which there was no larceny, and no probable cause to believe the plaintiff guilty of that offense, was in doubt, and presented a fair question for the jury, the trial judge correctly refused to take that question from them. There was consequently no error in his refusal to direct a verdict for the defendants.

If, as the testimony on the part of the defendants tended to show, the plaintiff was not a bailee of the property at the time he carried

it away, and appropriated it to his own use, the defendants, in our judgment, were entitled to the unqualified instruction to the jury that the plaintiff had not established want of probable cause. No element in the facts, that one being found to exist, was wanting to induce a reasonable man to believe that the plaintiff had larcenously taken the property of Mr. Sanders. The circumstance that the property was not taken clandestinely was not controlling. He had taken and appropriated it to his own use without color of right, and without permission. The felonious quality of the act was incapable of direct proof, but the patent facts authorized the inference that the plaintiff had taken the property with intent to defraud Mr. Sanders. Instead of such instruction to the jury, the trial judge first left it to them to find whether the plaintiff had established want of probable cause, thus leaving them to decide whether the facts proved constituted probable cause. This was error. Bulkeley v. Smith, 2 Duer, 261. And this error was supplemented by another, in the instruction that the plaintiff had shown want of probable cause if the jury found that the defendants had not fairly stated the case to their counsel. It was not at all controlling upon the question of probable cause whether the defendants had or had not acted on the advice of counsel, or procured that advice in good faith or unfairly. If they proceeded in good faith upon the advice of counsel, given upon a full representation of the facts, the defendants had an independent defense to the suit. But, whether they did or not, they were entitled to a verdict, if the evidence did not satisfy the jury that the plaintiff was not guilty, and was not apparently guilty when prosecuted, of the offense with which he was charged. In its bearings upon this defense, what was stated or omitted to be stated by the defendants to their counsel was only important as it tended to prove or disprove the real facts, and suggest malice. By the instructions given and withheld the defendants were practically deprived of the benefit of the defense of probable cause. The exceptions sufficiently reach the errors in the instructions, and the errors should lead to a reversal of the judgment. The judgment is reversed, and the action remitted for a new trial to the court below.

SHIPMAN, Circuit Judge, (dissenting.) I dissent from the result to which the court came in this case, but not from the correctness of the abstract rules of law which are stated in its opinion. I dissent because my examination of the record leads me to the conclusion that those rules have no adequate relation to the questions upon which the case was tried in the circuit court, and upon which it turned. The defendants put the strength of their defense upon the alleged fact that in ignorance of law, and seeking information as to the proper course to pursue, they fairly presented the facts to a competent lawyer, and acted upon his suggestion and advice. The defendant Charles W. Sanders testified that before he saw the lawyer he had no knowledge or information as to whether the facts constituted a ground for a criminal complaint; that he made no suggestion, in any form or shape, that criminal proceedings

should be taken; that the suggestion came from the lawyer, solely. In reply to the question whether he believed, on the day when the lawyer was consulted, that the posts had been taken with felonious intent, he said:

"Yes, by advice of counsel. Question. You believed so because your counsel so advised? A. That is it exactly. Q. Did you between the day you made the complaint that Mr. Palmer had stolen those posts feloniously? A. No, I did not believe anything about it until I saw my counsel."

The defendants thus substantially placed their case, as to the probable cause which they had for instituting the criminal complaint, upon their caution and care in obtaining legal advice, and submitting to counsel the question of their further action. The charge was full, in accordance with the repeated requests of their counsel in this regard. It is to be read in the light of the issue which was actually before the jury, and it is apparent that the judge charged the jury upon the points actually, and not theoretically, in issue. Whether there were reasonable grounds of suspicion, which should warrant belief in the plaintiff's guilt, arising from the facts which had come to the defendant's knowledge, apart from the knowledge and advice which they received from the lawyer, was a question which was not actually in the case. The first error which the court finds was committed was not, apparently, excepted to. The second, for the reasons already stated, did not exist.