# CHARLESTON.

## H. C. WILMER *v.* HARRY ROSEN

(No. 5591)

Submitted May 4, 1926.     Decided May 18, 1926.

(Rehearing Denied November 12, 1926.)

1.  MALICIOUS PROSECUTION—*In An Action for Malicious Prose-cution the Existence of Probable Cause is Generally Mixed Question of Law and Fact.*

    In an action for malicious prosecution the existence of probable cause is generally a mixed question of law and fact. (p. 12.)

    (Malicious Prosecution, 38 C. J. § 193.)

2.  SAME—*In An Action for Malicious Prosecution, Where De-fendant Relies on Advice of Counsel to Justify His Institu-tion of Legal Proceedings Alleged to Have Been Malicious, He Must Not Only Show That He Consulted Lawyer, to Whom He Made Full and Accurate Statement of All Mate-rial Facts, But Also What Facts Were Disclosed to Coun-sel, and That He Thereafter Instituted Such Proceedings in Good Faith in Reliance on Counsel's Advice.*

    In an action for malicious prosecution, where the defend-ant relies on advice of counsel to justify his institution of the legal proceedings alleged to have been malicious, he must show not only that he consulted a competent lawyer, to whom he made a full and accurate statement of all the ma-terial facts, but also what facts were disclosed to counsel, and that he thereafter instituted such proceedings in good faith in reliance on counsel's advice.  (p. 13.)

    (Malicious Prosecution, 38 C. J. § 184.)

3.  SAME—*In. Action for Malicious Prosecution Evidence of De-fendant's Zeal and Activity in Pushing Prosecution Against Plaintiff Admissible on Question of Malice.*

    In actions for malicious prosecution evidence of defend-ant's zeal and activity in pushing the prosecution · against plaintiff is admissible on the question of malice.  (p. 14.)

    (Malicious Prosecution, 38 C. J. § 181.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Mercer County.

Action by H. C. Wilmer against Harry Rosen. Verdict for plaintiff, defendant brings error.

*Reversed; verdict reinstated.*

*Russell S. Ritz,* for plaintiff in error.

*A. J. Lubliner* and *John Kee,* for defendant in error.

MILLER, JUDGE:

This writ of error was awarded to a judgment of the trial court setting aside a verdict for the plaintiff and awarding the defendant a new trial, in an action for malicious prosecution.

From the record it appears that for about two years plaintiff was in the employ of defendant, who was engaged in selling silverware and jewelry on the installment plan at Roanoke, Virginia. In establishing a branch office at Bluefield, this state, on May 1, 1923, the two entered into a written agreement, by which plaintiff was placed in charge of the Bluefield office. The agreement provided that the plaintiff was to be paid a salary of $60.00 per month and to have 33 1/3% of the profits arising from the branch office, and to be allowed to draw each month not to exceed $20.00 in addition, which was to be deducted from his share of the net profits; and plaintiff was to account to defendant at least once a week for all moneys collected, and to furnish itemized statements of all sales for the week, together with a complete inventory of the merchandise on hand. The contract did not provide for any particular time when a settlement between the parties was to be made.

On May 7, 1924, defendant Rosen came to Bluefield, and to the home of plaintiff, who was ill and confined to his bed. Plaintiff says: ''I was sick in bed at the time with pleurisy and bronchial trouble, under the care of a doctor, running a temperature of 102, and couldn't turn myself over in bed, and Mr. Rosen came in and said, 'Wilmer, you have given up,' and I said, 'Yes, I have gone the last day I could possibly go.' I had been working then for two weeks, and I was hardly able

to get around, and I told him the next day was the day for the settlement, that I had used $189.50 of my third, and I told him exactly where he would find those leases and all, and he turned around and said, 'third, hell, you've got no third, I'll let the law handle you,' \* \* \* and went out, and came back again and asked me did I have any money, and I said, 'Yes, what I had was in my pants pocket,' and he went to my pants pocket and took out what money was in there, and also took my watch out, the last cent I had in the world, and he threw six cents out on the bed and said, 'Take this and get your medicine.' " Later the same day Rosen swore out a warrant before a justice of the peace, charging plaintiff with embezzling and stealing money, bank notes, security for money, silverware and other property, to the value of $189.00, and silverware to the value of $100.00, and in company with a constable returned to plaintiff's home and had him put under arrest; but the officer reported plaintiff's physical condition to the justice, who, at Rosen's insistence, placed a guard at plaintiff's home until the next day, when the latter gave bond for his appearance before the justice. Upon a hearing the justice was of opinion that there was no probable cause for holding plaintiff and discharged him. From the defendant's contradictory statements when on the witness stand, it is difficult to determine just what did occur on his visit to plaintiff's home. At the July term of the criminal court, defendant Rosen appeared before the grand jury and secured an indictment against plaintiff for the larceny of $189.00 in money, and of silverware to the value of $110.00. In the meantime plaintiff had gone to Roanoke, Virginia, his former home, and was staying with his sister, until he could recover from his illness and obtain work. Armed with a warrant of arrest, Rosen went to Roanoke, and in his own automobile with the city chief of police hunted up the plaintiff, had him arrested and took him to jail, where he was imprisoned for two days, until he could secure bond. Later the plaintiff returned to West Virginia and gave bond for his appearance at the next term of the criminal court of Mercer County. He was never brought to jail, the charge against him being dismissed on motion of the prosecuting attorney.

Plaintiff justified taking and using the $189.00 in question on the advice given him by Rosen that he had an interest in the profits of the business and a right to use a part thereof. Plaintiff testified: ''He made the statement several times that I had a one-third interest, that I might as well go ahead and use it and keep account of it and when we had a settlement he could take it out of my third. * * * He said the amount of salary I was getting was small and he knew everything in Bluefield was high, and that I didn't have the proper clothing. * * * He said I didn't dress like a manager ought to dress, and to go ahead and take some of the money and use it, that one-third of it was mine.'' Further questioned, plaintiff testified: ''Q. Did you take part of the money you collected from customers and devote it to your own use? A. I did. Q. Please tell the jury whether or not you kept account of the money? A. I did, certainly.''

On the trial defendant did not deny that he told plaintiff he had an interest in the profits, and to take a part of the money collected for his own use. In argument it was stated by counsel that this testimony was excluded from the jury, and that there was no opportunity or reason for denying it. But we find on pages twenty-seven and twenty-eight of the printed record plaintiff's testimony as above quoted, not objected to, and submitted to the jury. It is true the testimony of Mrs. Wilmer, and the witnesses Land and Yancy, on the same subject, was rejected. These witnesses, in the absence of the jury, testified that they were present when the alleged conversation between the parties occurred, and that Rosen said to plaintiff substantially what plaintiff testified to. If defendant failed to deny the facts testified to by plaintiff, the error was his and not that of the trial court. And this evidence was certainly pertinent to the issue, to sustain plaintiff's theory that he was taking and using his own money, to be deducted later from his part of the profits. No time was named in the original agreement for a settlement between the parties, and if Rosen agreed that plaintiff should receive such advancements, and plaintiff kept a proper account of the same until a final settlement, he was guilty of no crime. He says he kept account of the money used, and told defendant the

exact amount thereof; and the warrant issued by the justice of the peace charged him with the larceny of that amount. It also appears from defendant's own testimony that the warrant was issued before plaintiff's accounts were checked up, and immediately after he advised Rosen of the amount to be charged against him on the settlement he was expecting to be made the next day. And after the accounts and leases or sales contracts had been checked up, the indictment found by the grand jury, two months later, charged the larceny of $189.00. Defendant testified that the amount of the shortage was much greater, but there was no direct evidence to prove such larger amount, nor the nature of the items making up the amount claimed.

Defendant's counsel insist that plaintiff's own testimony convicts him of the offense charged in the warrant and in the indictment, and show probable cause for the criminal prosecution. He did testify that he appropriated some of the money collected from customers to his own use, as he contends he had a right to do in view of defendant's advice that he was entitled to one-third of the profits, and that he "might as well go ahead and use it and keep account of it," until a settlement was had. It is true that plaintiff seems to have used a very loose system of bookkeeping and accounting. But he was charged with every piece of silverware consigned to his office; and he says defendant could have ascertained at any time the exact amount to be charged against him by checking up the stock on hand and the leases or sales contracts by which the goods were sold to customers. It does appear that at one time an inventory showed the stock in plaintiff's hands to be short, and that defendant charged him with the retail price of the lost articles, as evidenced by a letter to plaintiff of April 28, 1924, about ten days before the warrant was sworn out.

Defendant insists that in this case the existence of probable cause was a question for the court, citing *Bailey* v. *Gollehon*, 76 W. Va. 322, where it was held that: "If, in an action for malicious prosecution, sufficient facts to constitute probable cause for institution of the criminal proceedings are clearly established by admissions or uncontradicted evidence

or both, it is the province of the court to deny right of recovery by direction of a verdict for the defendant or the setting aside of a verdict for the plaintiff.'' ''On the other hand probable cause is a mixed question of law and fact. What are the existing facts, on which probable cause or its absence is based, is a question of fact to be decided by the jury.'' *Vinal* v. *Core,* 18 W. Va. 1; *Fetty* v. *Huntington Loan Co.,* 70 W. Va. 688, 693; *Goodman* v. *Klein,* 87 W. Va. 292. The jury had a right to believe that plaintiff acted in good faith in taking money which he honestly considered his own. The question of his intent was for their determination.

On the trial defendant relied mainly on the fact that he obtained the warrant for plaintiff's arrest, and testified before the grand jury, on advice of counsel. It is true, as our cases hold, that: ''In a suit for malicious prosecution the defendant may show in defense that prior to the institution of the proceedings which are alleged to have been malicious he in good faith consulted a competent attorney, to whom he made a full and accurate statement of the facts, and that the prosecution was instituted in good faith in reliance on the advice received by the defendant from the attorney so consulted.'' *Sudnick* v. *Kohn,* 81 W. Va. 492. But, after a full and fair statement of the facts by defendant, he must act upon the advice of counsel in good faith; and the question of good faith is one for the jury. *Sudnick* v. *Kohn, supra;* 18 R. C. L. 48.

Did defendant make a full and fair statement of all the facts to counsel? ''The defendant should show what facts were stated to counsel, in order that it may be determined whether a full and fair disclosure was made.'' 19 Am. & Eng. Enc. Law, 687; 38 C. J. 494; 18 R. C. L. 47-48. What facts defendant disclosed to his lawyer do not clearly appear. He himself says that he presented all the facts; but that is all he says. His counsel says that he showed him a copy of the original agreement between him and plaintiff, and some of the forms of his leases, and explained how the entries were made. But it nowhere appears that defendant told counsel that he had advised plaintiff that the latter had an interest in the profits and right to use a part thereof; and it is not probable

that he did so, or the attorney would not have advised him to institute criminal proceedings. In *Cooper* v. *Utterback,* 37 Md. 282, 315, it is said: "The advice must be based upon a full disclosure of all the facts in the defendant's knowledge, or which with due diligence he might have known. The omission of any material fact by design or otherwise, would render the advice nugatory." In *Jonasen* v. *Kennedy,* 39 Neb. 313, 317, the court said: "In order to make this defense available the communications with the attorney must be proved. Then it is for the jury to say whether or not the statement was true and full. A witness cannot be permitted to draw that inference for the jury by testifying in general language that he did make a full statement or that he told all the circumstances." Unless the facts disclosed to counsel are made to appear to the jury, how can they determine whether or not a full and fair disclosure of the material facts was made? This question must be determined from the actual facts as disclosed on the trial, and those shown to have been communicated to counsel.

The trial court, in his written opinion, assigned among other reasons for setting aside the verdict of the jury, that it was error to permit Mrs. Wilmer to testify as follows: "Q. Please tell the jury what the defendant Rosen said there of and concerning your husband at that time? A. Mr. Morrison came in to arrest Mr. Wilmer, and to read the warrant to him, and he was lying in bed, and I said, 'Mr. Morrison, Mr. Wilmer is sick, he can't go now—' Q. (By the Court) That was in the presence of Mr. Rosen, was it? A. Yes, sir. And he said, 'Wait a minute, wait a minute,' and Mr. Morrison did, and before anything else was said, Mr. Rosen said, 'Drag him out of there, if you can't bring him out I can,' and then I went out into the hall to talk to Mr. Rosen, and he wouldn't talk to me, he said, 'Let the law handle him, by God.' " The court was of opinion that defendant's acts and words after the complaint before the justice were not admissible for the purpose of showing malice. But the decided weight of authority seems to be that evidence of zeal and activity in pushing the prosecution against the plaintiff is properly admissible to prove malice. 38 C. J. 492; 19 Am. &

Eng. Enc. Law, 696; 18 R. C. L. 32; *Turner* v. *Walker,* 3 Gill & Johns. (Md.) 377, 22 Am. Dec. 329. "Evidence of hostility on the part of the defendant toward plaintiff before instituting the prosecution is admissible, and if connected with the matter in controversy it is admissible, if subsequent to the commencement of the action." 8 Enc. Evidence, 406-7.

While the motion for a new trial assigned error in the giving of certain instructions for plaintiff and the rejection of others offered by defendant, no mention is made in the briefs of counsel of the instructions given or refused. We have, however, carefully examined the instructions, made part of the record, and find them most favorable to defendant. The jury were fully instructed on the questions of probable cause, malice, and advice of counsel.

Much of the oral argument before this court, and that in briefs of counsel for each of the parties, was devoted to the legal effect of the written agreement of May 1, 1923, counsel for plaintiff contending that it created a partnership between the parties. In view of what we find to be the controlling questions in the case, we deem it unnecessary to decide the question of partnership.

The judgment will be reversed, the verdict of the jury reinstated, and judgment thereon entered for plaintiff.

*Reversed; verdict reinstated.*