BLAKELY et al. v. GREENE (two cases).

Circuit Court of Appeals, Fourth Circuit.
March 1, 1928.

Nos. 2651, 2652.

1. Pleading ⬅48—Declarations stating causes of action succinctly and certainly are sufficient on general demurrer.

Declarations clearly and distinctly setting out causes of action with succinctness and certainty, though without great elaboration, are sufficient on general demurrer.

2. Malicious prosecution ⬅56—Plaintiff in malicious prosecution suit must prove malice and want of probable cause.

In suit for malicious prosecution, burden is on plaintiff to prove malice and want of probable cause.

3. Malicious prosecution ⬅71(2, 3)—Malice and want of probable cause for embezzlement prosecution held for jury.

Malice in and want of probable cause for prosecution of employees for embezzlement held for jury, on conflicting testimony in their action for malicious prosecution.

4. Malicious prosecution ⬅72(4)—Instructions that malice may be presumed from lack of probable cause for prosecution and institution thereof to settle civil obligations considered in establishing malice held not erroneous.

Instructions, in actions for malicious prosecution, that malice may be presumed from lack of probable cause, and that fact, if believed by jury, that criminal proceedings were instituted to settle civil obligations, rather than to punish for crime, may be considered in establishing malice, held not erroneous, particularly when read with court's general charge and specific instructions ·given at defendant's request.

5. Appeal and error ⬅1033(5)—General charge as to what plaintiffs in malicious prosecution suits must prove, and instructions for defendants, held most favorable to defendant appellant.

In actions for malicious prosecution, court's general charge that plaintiffs must prove prosecution, instigated by defendants and terminated by acquittal, as to which "there are no disputes" in evidence, though case was dismissed as to one plaintiff, want of reasonable or probable cause, and legal malice, that is, improper or sinister motives, by preponderance of evidence, and instructions given in defendant's behalf, held not open to objection by defendants, to whom they were most favorable.

6. Malicious prosecution ⬅71(2)—Probable cause for prosecution is law question for court on undisputed facts, but otherwise for jury.

Where facts are undisputed, probable cause for institution of criminal proceeding is a question of law for court, but otherwise is one of fact, or of mixed law and fact, for jury.

7. Malicious prosecution ⬅72(2)—Instructions that probable cause for prosecutions is presumed, that few would be instituted if evidence insuring conviction must first be secured, and that institution thereof should not be deterred by fear of damage suit, held properly refused.

In malicious prosecution suits, instructions that legal presumption is that every prosecution for crime is founded on probable cause and instituted for purpose of justice, that few prosecutions would be set on foot if every man, suffering by ·perpetration of crime must first ascertain, under penalty of heavy damages, that he has evidence insuring conviction, and‚that those having reasonable cause to believe that crime has been committed should not be deterred from instituting prosecution by fear of

having jury assess damages against them if accused be acquitted, *held* properly refused as argumentative, prejudicial, and tending to thwart, instead of promote, ends of justice.

**8. Malicious prosecution ⬤⟿21(2)—Advice of reputable counsel, bona fide sought on fair statement of facts, is defense to malicious prosecution suit.**

Advice of reputable counsel, bona fide sought and given on full and fair statement of all facts and circumstances, is defense to suit for malicious prosecution instituted as consequence thereof.

**9. Trial ⬤⟿349(1)—Refusal of special interrogatories in malicious prosecution suits as to full and fair statement of facts and good faith reliance on prosecutor's advice held not error, in view of court's charge and evidence.**

In actions for malicious prosecutions, refusal to submit to jury special interrogatories as to whether defendant, before instituting prosecutions, made full and fair statement of all facts to assistant prosecuting attorney and relied on his advice in good faith, *held* not error, in view of court's charge and testimony adduced.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Actions by R. E. Greene and R. B. Greene, respectively, against J. W. Blakely and another. Judgments for plaintiffs, and defendants bring error. Affirmed.

Joseph M. Crockett and G. W. Howard, both of Welch, W. Va. (Harman & Howard, of Welch, W. Va., on the brief), for plaintiffs in error.

Russell S. Ritz, of Bluefield, W. Va. (Howell M. Tanner, of Bluefield, W. Va., on the brief), for defendants in error.

Before WADDILL and PARKER, Circuit Judges, and HAYES, District Judge.

WADDILL, Circuit Judge. These are two actions for malicious prosecution, one by R. E. Greene and the other by R. B. Greene, against J. W. Blakely and the Peerless Steam Laundry Company, a corporation. The parties will be referred to by their titles in the District Court. The two Greenes were brothers, and were both formerly employed by the Peerless Steam Laundry Company. The two cases were instituted in the United States District Court for the Southern District of West Virginia, at Bluefield, and the facts in both are substantially the same. They were, by agreement of the parties, tried together, and separate verdicts brought in in each case. In the case of R. E. Greene, the jury rendered a verdict against both defendants for $1,500, and in that of R. B. Greene

for $2,500. Judgments were entered upon both verdicts in favor of the plaintiffs, from which the defendants sued out these writs of error, seeking to have reviewed and reversed the judgments so rendered. By agreement of the parties one bill of exceptions was taken in the two cases, with the understanding that the same should be applied and considered as the bill of exceptions in both cases, and that only one record was to be printed.

Issue was regularly joined upon the pleadings in each case. A large number of witnesses were examined by the respective sides in the effort to sustain their several contentions, and as to practically all of the essential features the testimony of the witnesses was in sharp conflict. R. E. Greene was employed by the defendant company in July, 1923, and R. B. Greene in March, 1924. At that time a Mr. Hutcherson was in charge of the company, and in March, 1924, U. P. McFarland was made manager, and so remained until the employment of the Greenes ceased, in January and February, 1926, respectively. The Greenes were employed by the laundry company as drivers of trucks, and were assigned to different routes, and their duties were to gather up laundry, bring it to the plant to be washed and ironed, and deliver it back to the customers, collecting from the customers upon the delivery of the laundered material, and to account to the laundry company for the money so collected. During the year 1925 the company had six drivers, in addition to the Greenes, and when the laundry was collected and brought to the plant a list was kept of the articles to be laundered, and the customers to whom each package belonged. The packages of soiled laundry were charged to the drivers on what was called the "driver's sheet," as they were brought in, and upon the laundry being prepared for delivery, each driver would take the packages that had been brought in by him back to the customers and receive credit as delivered, and collected for, or return the undelivered packages to the company.

McFarland, the manager, testified that the drivers were to collect the money for the laundry upon delivering the same to the customers, and were given explicit orders and instructions not to extend credit, and in the event a driver violated this order he was to be responsible, and the amount lost by reason of such credit was to be deducted from the amount due him when the weekly settlement was made. At these weekly settlements credit was given for any laundry brought back, or which could not be delivered, and for re-

pairs necessary to be made to the truck while delivering the laundry, together with other necessary expenses incurred by the driver, for which money was paid and receipts taken, and presented at such weekly settlements. L. E. Woods, who was president of the defendant company during the year 1925, stated that it was the policy of the company not to permit the drivers to allow credit to customers for laundry. McFarland testified that R. B. Greene was to receive a commission of 20 per cent. during 1925 on laundry gathered by him, for which he made collection and delivered the money to the company; that these commissions were paid weekly by check; that R. E. Greene was guaranteed $15 per week salary for the first $100, and a commission of 12 per cent. on laundry for from $100 to $200, and 15 per cent. on laundry from $200 to $300, and that such salary and commissions were paid each week by check; that these checks due drivers were calculated on the basis of laundry brought in by them and the laundry charged to them, less such packages which the drivers could not deliver, and less expenses actually incurred by them for repairs to laundry vehicles, or for any money actually paid by them for laundry misplaced or lost at the plant.

As to the agreements of employment, there was a conflict between the testimony of McFarland and the Greene brothers. R. B. Greene testified that his commission was 20 per cent., and arrived at by the amount of laundry brought in to the plant, and not by the amount which he delivered and collected for, and that, if he extended credit and failed thereafter to collect for the same, the company lost; that he had authority from McFarland, the manager, thus to allow credit, and that McFarland told him that that was the only way he could get the business. R. E. Greene corroborated R. B. Greene as to their right to credit customers, and said that the authority so to do was given by McFarland, and that he had authority under his contract to give credit as he pleased, and had the right also to take the laundry and deliver it back to the customers; that the loss fell upon the company, and not upon him, if he failed to collect the sum for which he gave credit; that the company furnished the truck used by him, paying for gasoline and repairs thereto.

On the question as to the right to extend credit, and upon whom the loss should fall if credit was given, there was a direct conflict in the testimony. E. E. Thorpe and W. T. Lea, drivers working for the company during the period of the Greenes' employment, sustained the Greenes' contention, and Clyde Sisk, R. B. Armentrout, and K. C. Stewart, also drivers during that period for the laundry company, testified for the defendant company. W. T. Lea testified, as did Thorpe, that they settled any losses arising from credits extended by them; that McFarland knew of the extension of credit; that on one occasion McFarland in his own handwriting made a memorandum of credit he had given. McFarland admitted that he knew that some of the drivers were allowing credit, but with the understanding that, if they did not collect it, the amounts would be taken out of their commissions or salary.

The testimony established that all of the drivers made practically regular weekly settlements, until about the month of June, 1925. Subsequent to the month of June, 1925, the two Greenes did not come to the office of the company or make further weekly settlements, and did not thereafter indorse or accept any more weekly commission checks, although they remained in the service of the company until January, 1926. The checks for cash due in the case of R. B. Greene amounted to $1,380.18, and in the case of R. E. Greene, $1,067.75. The Greenes testified that the reason for not promptly making settlements was that they could not get McFarland, the manager, to make the same with them. R. B. Greene said that he made repeated efforts to make McFarland settle with him, but could not get him to do so, and that McFarland always gave some excuse or another. R. E. Greene testified that he made settlements regularly with McFarland from the fall of 1924 until June, 1925, and said that the reason that he did not make a settlement after that date was that, when he saw McFarland and asked about doing so, McFarland said he did not have time. Greene says he did not catch McFarland, because he wanted to save time, as he was busy. He further stated that these settlements were generally made on Wednesday afternoon; that he did not "lay off on Wednesday afternoon, to come in with the other drivers, because he wanted to get all the business that he could." McFarland denied the statement of the Greenes as to their inability to get him to settle, and said that, on the contrary, he tried to get them to do so, and he admits that from June, 1925, to February, 1926, no settlements were had with the Greenes, though their accounts grew larger each week during that period.

Much testimony was adduced by the parties, respectively, to sustain their contentions

as to the terms of the contract under which plaintiffs worked, the right to extend credit for laundry, and upon whom losses arising, therefrom, if any, should fall, and the manner, time, and method of making settlement.

At the annual meeting of the directors of the company in January, 1926, McFarland made a report to the board of the condition of the accounts of the two Greenes, claiming that they were each indebted to the company, R. E. Greene for approximately $2,000, and R. B. Greene for approximately $3,000. In about two weeks after making such report, McFarland's connection with the company ceased, and the defendant, Blakely, was chosen secretary and treasurer of the company, apparently succeeding McFarland in authority. J. D. Rau was appointed bookkeeper. McFarland, after retiring from the company, was requested to effect a settlement with the Greenes, and Blakely employed an accountant to make an audit of the defendant company's accounts, which was made as of February 13, 1926, and the report of this audit was mailed to the president of the company on March 16, 1926.

Rau, the bookkeeper, says that on February 8th he saw R. B. Greene and requested a settlement of his accounts, which Greene said he could not make that evening, as he did not have his papers and receipts with him, and promised to return the next morning for the purpose of making settlement, which he did not do, he says because of illness. At the time R. E. Greene had been in the hospital since the 21st of January, suffering from an operation for appendicitis. Upon these facts being reported to Blakely, he consulted with the assistant state prosecuting attorney, B. F. Howard, between the 13th and 20th of February, and related to him the facts as he understood them. On March 8th, criminal warrants were sworn out upon the advice of the assistant prosecuting attorney, and the plaintiffs were arrested and imprisoned in jail, and there remained— R. E. Greene for eight days and R. B. Greene for a somewhat shorter period; his incarceration being delayed, on account of the condition of his health, until the county health officer could pass upon the probable danger to him by so doing. The two Greenes were sent on to the grand jury by the justice of the peace before whom the warrants had been sworn out, and were each indicted for embezzlement by the grand jury. Upon trial of the criminal cases on the merits, R. E. Greene was acquitted, and the indictment against R. B. Greene was nolle prosequied, and the case was dismissed, and the two prosecutions were thus ended and finally disposed of, as to both defendants. These malicious prosecution actions followed, with the result that verdicts and judgments were rendered and entered in favor of both of the plaintiffs against the two defendants as hereinbefore recited; that is, in favor of R. E. Greene for $1,500, and R. B. Greene for $2,500, with interest and costs.

After all the testimony upon the trial of these cases had been adduced, the defendants by counsel moved the court to instruct verdicts in their favor, which motions the court overruled, and the defendants excepted. Upon the cases being submitted to the jury, verdicts as aforesaid were rendered in favor of plaintiffs, whereupon defendants moved the court to set aside the verdicts and to grant them a new trial, and to render judgments in their favor notwithstanding the verdicts, which motions the court likewise overruled, and gave judgments on the verdicts in favor of plaintiffs, to which ruling and action of the court the defendants also excepted.

Upon the submission of the cases to the jury, elaborate instructions were requested by the respective parties. The plaintiffs asked for 7 instructions, 3 of which, Nos. 3, 4 and 7, the court gave, and declined to give the remaining 4, Nos. 1, 2, 5, and 6. To the giving of instructions Nos. 3, 4, and 7 over defendants' objection, the defendants excepted. The defendants tendered 16 instructions, and also propounded certain interrogatories, which interrogatories the court declined to authorize, and also refused to give defendants' instructions Nos. 1, 12, 13, and 15. For the failure to give these last-named 4 instructions, and the refusal to allow the interrogatories to be filed, the defendants also excepted. The court at the same time delivered a full and comprehensive charge, including as a part thereof 12 of the 16 instructions asked for by defendants as aforesaid.

[1] The assignments of error are particularly directed against the court's ruling in giving 3 of plaintiffs' instructions over defendants' objection, and the rejection of 4 of the 16 instructions offered by defendants, together with its action on the interrogatories submitted; there being, so far as we perceive from the record, no exception to the court's charge otherwise, and the same will be taken up in regular order, the same assignments having been made in both cases:

First. That the court erred in overruling the demurrer to the declaration filed by the defendants in each of the cases against them. This assignment seems to us to be en-

tirely without merit. No specific objection is made to the declarations, other than that they are not sufficient in law. The declarations set out clearly and distinctly the causes of action sought to be maintained in the cases, without great elaboration, it is true, but with succinctness and certainty, and the demurrers were therefore properly overruled.

[2, 3] Second. Assignments 2, 3, and 9 may properly be considered together, in that they all relate to the sufficiency of the testimony to warrant the finding of the verdicts against the defendants. Assignment No. 9 is to the effect that the court erred in refusing to instruct a verdict for the defendants in each case, and assignments 2 and 3 involve precisely the same question, namely, that the evidence in each case was insufficient to warrant the finding of verdicts in favor of the plaintiffs, and that therefore verdicts should have been rendered in favor of defendants. Under our view of this testimony, and especially having regard to the technical legal questions incident to the maintenance of suits for malicious prosecution and the burden resting on the plaintiffs in such cases as respects both probable cause and malice, the objections were clearly not well founded. The conflict in the testimony, covering the entire case, shows that the court should not have taken the cases from the jury, but on the contrary, have submitted the same for its consideration, under intelligent and proper instructions, as was done.

[4] Third. Assignments 4 and 5 should be considered under the same general head, as they both relate particularly to the principles of law properly applicable and controlling in malicious prosecution suits, especially as respects the doctrine of probable cause and the existence of malice. Counsel on both sides cite and rely upon a decision of this court in Staunton et al. v. Goshorn, 94 F. 52, an important malicious prosecution and false imprisonment case from West Virginia, in which many of the more important and interesting questions arising here are considered and passed upon. Assignment No. 4 was to the giving by the trial court, over the objection of the defendants, instruction No. 3, which is as follows:

"The court instructs the jury that, in an action for malicious prosecution, malice may be presumed from the lack of probable cause."

The fifth assignment of error consists of the exception by the defendants to the court's ruling in giving the plaintiffs' instruction No. 4, as follows:

"The court instructs the jury that, if you believe from the evidence the defendants put on foot the criminal proceedings against the plaintiffs without probable cause, then from this fact alone you may presume the same was done maliciously, or if you believe that said criminal proceedings were instituted for the purpose of forcing the settlement of civil obligations rather than the punishment for any crime, then this fact or circumstance may be considered in establishing malice."

These two instructions, if considered alone in the light of the circumstances of this case, could not be said to be erroneous, particularly when read with the court's general charge on the subjects involved and the specific instructions given by the court as offered by the defendants.

[5] The court's general charge, in part, is as follows:

"Malicious prosecution is one of those cases that requires four things, that is, the plaintiffs in this suit must prove to your satisfaction four things: (1) The existence of the prosecution and the fact that the defendants were the prosecutors or instigators of the same. (2) That this prosecution has finally terminated by his acquittal. There are no disputes, as I caught the evidence, on those two questions. Blakely and the Peerless Company were the prosecutors or instigators of this prosecution, and the existence of the prosecution is admitted on both sides. That need not bother you a moment. Neither need it bother you that the prosecution was finally terminated by the acquittal of one and the dismissal of the case against the other, which is equivalent to acquittal. The third proposition is that this prosecution was instituted without reasonable or probable cause. There is little difference in the meaning of 'reasonable' or 'probable' under such circumstances, but the books say both. Fourth, that Blakely and the Peerless Laundry Company were actuated by legal malice; that is, improper or sinister motives. That line of things must be proven by a preponderance of the evidence, before you can find a verdict of guilty and find actual damages, or assess damages against these defendants in favor of these plaintiffs."

The court also gave in behalf of the defendants instructions Nos. 3, 4, 5, 6, 7 and 8, as follows:

"No. 3. The court further instructs the jury that, though the plaintiff as the accused in one case was acquitted of the offense charged against him, such acquittal is not evidence of the want of probable cause, but such evidence of acquittal is admissible only

to show that the prosecution was terminated favorably to the plaintiff. And the same rule applies to the plaintiff, R. B. Greene.

"No. 4. The court further instructs the jury that probable cause for instituting a prosecution is such a state of facts actually existing and known to the prosecutor personally or by information derived from others as would in law justify the setting on foot of the prosecution; that is, such as in the judgment of the court would lead a man of ordinary caution, · conscientiously acting on actual facts, to believe the accused guilty; such a state of facts would lead a man of ordinary caution and prudence to believe and entertain an honest and strong suspicion that the accused was guilty of the offense imputed to him. I would rather have used the word 'opinion' than 'suspicion.'

"No. 5. The court instructs the jury that, while it is your duty to protect citizens, including the plaintiff, against criminal proceedings which are not justified by the facts and by the law, yet at the same time you should be careful to ascertain in this action whether or not the defendants in their prosecution of the plaintiff acted in good faith and from probable cause, so as not to deter prosecutors from the institution of criminal proceedings honestly intended to . punish public offenses against the law.

"No. 6. The court further instructs the jury that the facts and circumstances evidencing probable cause are to be viewed from the standpoint of the defendants, and not that of the plaintiff. In other words, if the defendants learned or honestly believed that they learned certain facts, and believing them to be facts, acted thereon, you judge this proposition as to probable cause from that, rather what the plaintiffs might think of it.

"No. 7. The court further instructs the jury that, while malice may be inferred from want of probable cause, no matter how much malice may be shown, want of probable cause will not be inferred from such malice. To use the words of a distinguished jurist in a certain case:· 'It was not enough to establish that the prosecution complained of was instigated by the defendants, and the proceedings instituted by them with malice and ill will towards the plaintiffs. It was necessary that the plaintiff should have gone a step further, and shown that there was no probable cause for the inauguration of the prosecution.' If defendants acted with probable cause, they were not liable in an action for malicious prosecution, it matters not how vindictively they may have acted or what their motives may have been.

"No. 8. The court further instructs the jury that malice and want of probable cause both must be proved by a preponderance of the evidence to entitle plaintiff to recovery."

This charge and the instructions are not open to the objection made by the defendants. On the contrary, the same are most favorable to the defendants. Staunton v. Goshorn (C. C. A.) 94 F. 56, supra—citing Wheeler v. Nesbitt, 24 How. 544, 550, 16 L. Ed. 765; Stewart v. Sonneborn, 98 U. S. 187, 192, 194, 195, 25 L. Ed. 116; Crescent City Live-Stock Co. v. Butchers' Union S. H. Co., 120 U. S. 141, 148, 149, 7 S. Ct. 472, 30 L. Ed. 614; Sanders v. Palmer, 14 U. S. App. 297, 307, 5 C. C. A. 77, 55 F. 217; Munns v. De Nemours, 3 Wash. C. C. 31, Fed. Cas. No. 9,926; Scott v. Shelor, 28 Grat. (69 Va.) 891, 899; Mitchell v. Wall, 111 Mass. 492; Howard v. Thompson, 21 Wend. (N. Y.) 320, 1 Am. Lead. Cas. 200, 213; 1 Hil. Torts, c. 16, § 18.

[6] The plaintiffs in error endeavored to show that the decision of this court in the Goshorn Case is favorable to them, in·that, as they claim, the facts in these cases bearing upon the question of probable cause are undisputed, and under the ruling in the Goshorn Case, relied on, the question of probable cause became one of law, and should not have been submitted to the jury, but, on the contrary, verdicts should have been instructed in favor of the defendants. Unquestionably the proposition of law contended for is correct, but, in the view we take, the evidence here is unlike that in the Goshorn Case, in that there is direct conflict in the same in the most essential particulars; that is, those involving the good faith of the defendants in instituting the prosecutions, and being thus a mixed question of law and fact, the same was properly submitted to the jury.

" * * * Whether or not there is probable cause for the institution of a criminal proceeding is sometimes a question of law and sometimes a question of fact. Where the facts are undisputed it is a question of law, and should be determined by the court; otherwise, it is one of fact and for the jury." Staunton v. Goshorn (C. C. A.) 94 F. 57, supra, citing Crescent City Live-Stock Co. v. Butchers' Union S. H. Co., 120 U. S. 141, 149, 7 S. Ct. 472, 30 L. Ed. 614; Stewart v. Sonneborn, 98 U. S. 187, 194, 25 L. Ed. 116; Sanders v. Palmer, 14 U. S. App. 308, 309, 5 C. C. A. 77, 55 F. 217; Knight v. Railway Co., 9 C. C. A. 376, 61 F. 87, 91. See, also, Wilmer v. Rosen, 102 W. Va. 8, 135 S. E. 225, 49 A. L. R. 261; Vinal v.

Core, 18 W. Va. 1; Lyons v. Coal Co., 75 W Va. 739, 84 S. E. 744; Lenhart v. Coal Co., 85 W. Va. 520, 102 S. E. 215; Bailey v. Gollehon, 76 W. Va. 322, 85 S. E. 556, 723.

[7] Assignment No. 6 was to the refusal of the court to give instruction No. 12, as asked for by defendants, as follows:

"The court further instructs the jury that the legal presumption is that every prosecution for crime is founded upon probable cause and is instituted for the purpose of justice."

Assignment 7 was to the refusal of the court to give instruction No. 13, asked for by defendants, as follows:

"The court further instructs the jury that, if every man who suffers by the perpetration of a crime were, under the penalty of heavy damages, to ascertain before he commences a prosecution that he has such evidence as will insure conviction, few prosecutions would likely be set on foot. The guilty would escape while conclusive evidence was sought for. Offenses of every kind would for the most part go unpunished, and the penal law would be scarcely more than a dead letter."

Assignment 8 was to the action of the court in refusing to give instruction 15 tendered by defendants, as follows:

"The court further instructs the jury that, while it is reprehensible to institute criminal prosecutions lightly, and thus to injure the character of an honest man, it should be constantly borne in mind that, in interest of good order and society, those who have cause reasonable to believe that a crime has been committed, and have knowledge of facts sufficient to justify such belief, ought not to be deterred from their public duty by the fear of having a jury assess damages against them, if the accused should be acquitted. And the jury are told that in actions of this kind the public interest requires that they should not overlook the rule of law that the existence of probable cause is complete defense in such an action."

These three instructions, severally and as a whole, were properly rejected, as, aside from being argumentative, they were undoubtedly prejudicial in character, and tended to thwart, instead of promote, the ends of justice. The trial court, in its general charge and specific instructions, amply stated all that it was necessary to say, and that should have been said, on these subjects, and, as a part of its general charge, added:

"A citizen is entitled to his freedom, and not to be prosecuted in the court, unless certain things concur prior to the beginning of the prosecution. The citizen must have done something, or at least must have appeared to have done something, in such a way as to show a probable cause for this action taken against him. Now, for the protection of the persons who initiate prosecution, the law has provided certain safeguards. We must not forget that in a suit of this kind we are on the middle ground. We want to protect the citizen who is charged with crime in all his rights, yet at the same time we must realize and understand that, if every person who starts a prosecution against somebody is to be mulcted in damages for so doing, no crime would ever be prosecuted by a citizen who has anything to lose; so I say this is a middle or dividing ground between the prosecution of a person charged with something and giving him all his right, and the protection of the person who charges him with crime and giving him all his right, and it makes a right technical thing in a way and a right difficult one sometimes to carry the thing known as justice."

[8, 9] Assignment No. 10 relates to the action of the trial court in refusing to submit to the jury certain special interrogatories propounded by counsel for defendants, bearing especially upon whether the defendant John W. Blakely, before the institution of the criminal proceedings charging the plaintiffs with embezzlement, made a full and fair statement of all the facts relative to their guilt or innocence to B. F. Howard, assistant prosecuting attorney for McDowell county, and in good faith relied upon the advice given him by said attorney. It seems that, under the laws of West Virginia in given cases, interrogatories may be submitted by parties litigant bearing upon the issues in controversy. Just whether the law applies to a case like this, and, indeed, can be availed of in the federal practice at all, may be said to be a question of considerable doubt. Especially is that true in this case, where the interrogatories related to the very issues involved in the trial, and to something which must have been determined in reaching a conclusion on those issues under the pleadings and proofs in the cases. Lyons v. Real Estate Co., 71 W. Va. 754, 77 S. E. 525; Moran v. Moran, 93 W. Va. 344, 116 S. E. 709.

" * * * That the advice of reputable counsel, bona fide sought, and given upon full and fair statement of all the facts and circumstances, and as a consequence of which a prosecution was instituted, will serve as a defense in a suit for malicious prosecution, seems to be too well settled to admit of serious contention." Staunton v. Goshorn (C.

C. A.) 94 F. 52, supra, citing Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116; Sanders v. Palmer, 14 U. S. App. 297, 5 C. C. A. 77, 55 F. 217; Forbes v. Hagman, 75 Va. 168.

The case of Stewart v. Sonnenborn, 98 U. S. 187, 25 L. Ed. 116, will be found a most interesting and instructive decision on this subject. More recent decisions can be found in 18 R. C. L., p. 48; see also Wilmer v. Rosen, 102 W. Va. 8, 135 S. E. 225, 49 A. L. R. 261; Sudnick v. Kohn, 81 W. Va. 492, 94 S. E. 962.

The learned judge in the court below ably and fully discussed this subject, and submitted the same to the jury, and it cannot reasonably be doubted, in the light of his charge and the testimony adduced, that the jury fully understood and passed upon the issue raised upon this question unfavorably to the plaintiffs in error upon the facts.

The decisions of the lower court, under the law and facts in these cases, are free from error, and the same are affirmed, with costs.

Affirmed.